[ * 508 ]                *HAMERSLEY *against* LAMBERT and others.

> This Court gives relief against the representatives of a deceased partner who has left *assets*, if the surviving partner be insolvent. And the defendants cannot object a want of due diligence in the creditor, in not prosecuting the surviving partner, before insolvency. No delay, in this respect, nor lapse of time, nor dealing with the surviving partner, or receiving from him a part of the debt, will amount to a waiver, or bar of the claim on the *assets* of the deceased partner. For it is a joint and several debt, and the assets of the deceased partner remain liable until the debt is paid. Besides, the discharge of the surviving partner under the insolvent act, is a good plea in bar to a suit against him.
>
> That a suit was brought by the plaintiff, as trustee for an *alien enemy*, is no objection, after the war, as the suit was not abated during the war, and the disability merely temporary.

*July* 8th.     *JOHN BEDIENT* and *Walter Hubbell* were partners in trade, prior to 1803. The partnership was dissolved, by the death of *Hubbell*, in *September*, 1803. At his death, the firm was indebted to *Thomas Holmes*, of *Bristol*, in *England*, who died in 1808; and, on his estate, letters of administration were granted, in this state, to the plaintiff. Moneys were paid to *Holmes*, on account, in 1806, by *Bedient*, the surviving partner; and on the 1st of *January*, 1807, a balance of 3,393 dollars, 32 cents was admitted, by *Bedient*, to be due. In *October*, 1807, *Bedient* was discharged under the insolvent act of this state. The bill was filed in *May*, 1814, against the assignees of *Bedient*, the insolvent, and against the heirs and administrators of *Hubbell*. In 1809, the guardian of the two infant heirs of *Hubbell* paid into Court 8,041 dollars, 88 cents, belonging to the infants, which was invested in public stock. The balance due to the estate of *Holmes* was admitted by the administrators of *Hubbell* in their answer; and the insolvency of *Bedient* was proved by his discharge, produced as an exhibit, as well as admitted by his assignees in their answer.

[ * 509 ]        *G. Brinckerhoff*, for the plaintiffs, contended, that the
392

surviving partner being insolvent, the estate of the deceased partner was chargeable, in equity, with the whole debt.

*Burr*, contra, contended, that the demand was not sufficiently proved; that there had not been due diligence in collecting the debt against *Bedient*. That the discharge of *Bedient* was no bar to this demand, belonging to an *English* subject, resident abroad; and that the suit was commenced on his behalf, while he was an alien enemy.

THE CHANCELLOR. All the objections must be overruled. The plaintiff is entitled to receive the debt out of the assets of the deceased partner. The demand was sufficiently admitted; and interest was to be cast on the balance liquidated and acknowledged on the 1st of *January*, 1807. It is well settled, that relief may be had in equity against the representatives of a deceased partner leaving assets, if the surviving partner be insolvent. This was the principle declared by Lord *Hardwicke*, in the case of *Simpson* v. *Vaughan*, cited in 2 *Vesey*, 101.; and the point was established in the Court of Errors, in this state, in *Jenkins* v. *Degroot*, (1 *Caines's Cases in Error*, 122.) and admitted as a rule of equity in the Circuit Court of the *United States*. (*Reimsdyk* v. *Kane*, 1 *Gall. Rep.* 371. 630.) The defendants cannot set up a want of due diligence in not prosecuting *Bedient* before his insolvency; for the demand was equally the debt of both partners; and the consideration from which it arose, is to be presumed to have equally assisted both of them. The doctrine of due diligence, and of prompt notice, as arising upon claims against drawer and endorser, is not applicable. For this I may generally refer to the adjudged cases in which the subject has been discussed. (*Lane* v. *Williams*, 2 *Vern.* 292. *Heath* v. *Percival*, 1 P. *Wms.* 682. *Bishop* v. *Church*, 2 *Vesey*, 100. 371. *Daniel* v. *Cross*, 3 *Vesey, jun.* 277. *Stephenson* v. *Chiswell*, 8 *Vesey, jun.* 566. *Gray* v. *Chiswell*, 9 *Vesey*, 118. *Ex parte Kendal*, 17 *Vesey*, 514. *Orr* v. *Chase*, app. to 1 *Merivale's Rep.* 729.) But I would specially notice the recent decision of *Devaynes* v. *Noble*, (1 *Merivale's Rep.* 539. 572.) in which the question was fully and ably considered, how far a creditor loses his right in equity, to resort to the assets of a deceased partner, by delay in calling for his debt from the survivor. It was ruled by Sir *Wm. Grant*, the master of the rolls, after a full examination of the cases, that the creditor who continued, for a considerable time after the death of one partner, to deal with the survivor, and to receive partial payments from him, had, notwithstanding, a valid right to resort

[ * 510 ]

to the assets of the deceased partner, though the survivor, in the mean time, had become bankrupt, and the creditor had signed his certificate as a bankrupt. There was no period fixed, as he observed; nor did convenience require any fixed period within which a creditor, by not making his demand upon the surviving partner, should be held to have waived his equity against the estate of the deceased partner. If creditors, in order to preserve their recourse against the estate of the deceased partner, were bound to use all possible diligence to compel an immediate payment by the survivor, there are very few mercantile houses which could stand such a sudden and concurrent demand as that would necessarily bring upon them. If the estate of the deceased partner be, in any case, released, (as Lord *Eldon*, in the case *ex parte Kendal*, supposes *might* happen,) it would require a course of dealing, founded on peculiar circumstances, not exactly defined, between the creditor and the survivor, to rebut the equity of the claim against the estate of the deceased; to shift the obligation to pay from that estate, and fix it exclusively on the survivor. It was so far held in this very case of *Devaynes* v. *Noble*, (p. 585. 611.) that where the creditor continued to deal with the *survivors, being a banking house, by drawing out and paying, the balance varying, from time to time, but being, upon the whole, increased by such subsequent dealings, the subsequent payments, by the surviving partners, were to be taken, in reduction of the balance due at the death of the one partner, and his estate held discharged *pro tanto*. But this case fully established the doctrine, that neither delay, nor lapse of time, nor dealing with the survivor, nor calling for, and receiving part of, the debt from the survivor, amounts to a waiver, or bar, of the claim upon the assets of the deceased. It is, in equity, a joint and several debt; and, as Lord *Parker* observed in one of the cases, the assets of the deceased *must lie at stake, until the bond be paid*.

Such is the amount of the decision in the case of *Devaynes* v. *Noble*, and which is of great weight, from the full and accurate consideration which the whole subject received. I confidently conclude, as well from the respect which that decision deserves, as from my own examination of the cases referred to, that the opinion of the master of the rolls was a correct exposition of the law on the point.

But to return to the other objections on the part of the defendants. The discharge of *Bedient* under the insolvent act was within four years of the death of *Hubbell*; and that discharge is a good plea in bar in our own Courts to any suit, by any creditor. This was so ruled in *Penniman* v. *Meigs*. (9 *Johns. Rep.* 325.) There is as little force in the

objection, that the plaintiffs brought the suit as trustee for an alien enemy. The suit not being abated during the late war, cannot now be abated on the ground of a temporary disability which has long since ceased.

I shall, accordingly, direct a reference to ascertain the amount due, and decree the payment thereof out of the assets in Court.