# F. IRBY *v.* B. GRAHAM.

1. PARTNERSHIP — RELATIVE RIGHTS OF PARTNERSHIP AND INDIVIDUAL CREDITORS TO ASSETS OF DECEASED INSOLVENT PARTNER — STATUTE CONSTRUED. — The Code of 1857 (arts. 10 and 12, p. 357) does not break down the distinction before existing between the joint and several estates of partners, nor introduce a new rule of marshaling the assets of the joint and separate estates. Its object and effect are to make the liabilities of a partnership joint and several, and thereby to enable the creditor to sue at law the legal representatives of a deceased partner, as well as the survivor.

2. SAME — SAME — SUITS BY PARTNERSHIP CREDITORS. — The creditor may elect between the survivor and the administrator of a deceased partner, or he may pursue both, but ultimately, in the final adjustment and balancing of accounts and rights (if both estates are insolvent), the partnership creditors are remitted to the joint funds, to the exclusion of individual creditors, and separate creditors are confined to the separate estate.

3. SAME — SAME — INSOLVENT LAWS. — The statute in reference to the distribution of the assets of a decedent among creditors (Code of 1857, art. 102, p. 450) does not affect the right of partnership creditors to partnership assets, nor of separate creditors to individual assets. If the partnership is solvent, the creditors of a deceased partner have a right to the surplus of the decedent in the joint assets, after the partnership liabilities have been discharged. If the estate of the deceased partner is solvent, the partnership creditors may appropriate whatever surplus there may be, after satisfying the claims of individual creditors.

4. SAME — SAME — CASE CITED. — The case of Dahlgreen v. Duncan et al., 7 Smedes & Marsh. 293, cited and reviewed, and held not to announce the true view of the statutes in force on the subject referred to.

APPEAL from the chancery court of Panola county. SIMMONS, Chancellor.

*Walter & Scruggs* and *L. P. Cooper,* for appellant.

The rule at common law is, that partnership debts must be paid from partnership effects, and individual debts from individual effects. 3 Kent's Com. 65 ; Story on Part. ; McCulloch v. Dashiel, Admr., 1 Harr. & Gill. 96 ; 5 Johns. Ch. 60 ; 1 Story's Eq. 625. By this rule the private creditors should take all the private assets of Benjamin Irby. But it is insisted that this rule is changed by our statute, and by a decision of this court. The old law, How. & Hutch. 409, provided that, when the estate could not pay all the debts, the estate should "be distributed to and among all credit-

ors in proportion to their respective debts." Another statute made "all promises, contracts and liabilities of copartners joint and several." Ib. 595. Under these statutes, the high court in Dahlgreen v. Duncan, 7 Smedes & Marsh. 280, decided that all debts should be entitled to a *pro rata* proportion of effects. The chancellor below declared that the case before him was one of great hardship and injustice, and that he would not decree as he did but for this case of Dahlgreen v. Duncan.

Equality is what we ask. Make us equal to the creditors who have received 29.70 per cent of their debt, and we will *pro rata* the residue. We do not believe the law, as above found in How. & Hutch., has been materially changed by the provisions of the Rev. Code, p. 57, making all liabilities joint and several, and at p. 450, directing a distribution among all creditors. But it strikes us as monstrous, that these provisions should not only change the common-law rule of permitting partnership creditors to take only partnership effects, but enable them to take private effects, putting them in a better condition than private creditors. The chancellor could well have complied with the rule in Dahlgreen v. Duncan, and compelled equality among all the creditors. More than this our statutes do not contemplate and justice does not require.

But the court erred in giving to these partnership creditors any thing, as their claims had not been registered and allowed against the insolvent personal estate of Irby. They had been allowed as to the partnership administration (a most remarkable one); but as creditors of Benjamin Irby they had not presented their claims to his administrators, and the clerk had not made out a statement of a single one of these claims against the estate of Benjamin Irby. For this reason, if not for the former, the decree below must be reversed and the private funds must be given to private creditors who have registered their claims against the estate of Benjamin Irby. Rev. Code, 449, 450.

SIMRALL, J. :

The question arises upon the relative rights of partnership and individual creditors of the deceased insolvent, in the distribution of the proceeds of the separate estate in the hands of the administrator. The amount of claims allowed against the estate of Benjamin Irby, deceased, is $18,742. The amount of claims established against the partnership composed of the deceased and John F. Ward (which was also insolvent) is $7,597, upon which payments out of the partnership assets was made of $2,259, or 29 per cent on the dollar. The balance reported by the administrator for distribution is about $8,000. The chancery court decreed distribution equally between the partnership and individual creditors, after crediting the former with the 29 per cent realized from the firm effects. The individual creditors of the deceased claim that they are entitled to the whole fund, as being the produce of the separate property ; if mistaken in that, then they ought to receive 29 per cent of their debts so as to equalize them with the partnership creditors, before they shall be let in to share in the residue.

To the creditors of a copartnership, each member of it is answerable *in solido* for the joint debts, without reference to the extent of his interest in the business, or any private agreement between the members stipulating for a restricted liability. Gow. on Part. 16. At law the debts were joint, so that the creditor must sue all the members, in case of dissolution he could pursue the survivor ; he succeeding to the ownership of the assets for the purposes of liquidation and settlement in respect to the surplus with the administrator of the decedent. Faler v. Jordan, 44 Miss. ; 3 Col. on Part., § 566 ; 3 Kent's Com. 63 ; 4 Metc. (Mass.) 544. But, in the consideration of a court of equity, the debts are several as well as joint. But, inasmuch as the joint assets are the natural and primary fund for the payment of debts, it was at one time much mooted in the equity courts whether creditors shall not be required to pursue the survivor to insolvency at law, before they will be tolerated to move in

chancery against the estate of a deceased member. The earlier cases held, that there must be an insolvency of the survivor before the door of the equity court would be opened to relief against the decedent's estate. Of these were Cowell v. Sykes, 2 Russ. 191; Campbell v. Mullett, 2 Swanst. 574; *Ex parte* Kendell, 17 Ves. 514. Subsequently it was laid down by Sir Wm. Grant, in Devaynes v. Noble, 1 Merriv. 529, followed by Lord Brougham in 2 Russ. & Myl. 495, and accepted as the settled doctrine in Wilkinson v. Henderson, 1 Myl. & K. 532, approved by Chancellor Kent in Hammersly v. Lambert, 2 Johns. Ch. 509; 3 Kent's Com. 64; Wilder v. Keeler, 3 Paige, 167; United States v. Cushman, 2 Sumn. 441, that, inasmuch as the debt is several as well as joint, the creditor has his election to proceed in the first instance against the decedent's estate, without regard to the state of the assets in the hands of the survivor, whether solvent or insolvent; the administrator being remitted to his remedy against the survivor, for re-imbursement out of the joint funds. 1 Story's Eq. Jur., § 676.

This redress in chancery of permitting resort against the administrator of the decedent, before exhausting legal remedy against the survivor, does not rest upon the promise that an additional charge or responsibility is thrown upon the estate; such is not the case, for, if the firm's assets are able to respond to all the joint debts, the administrator, upon account taken between him and the survivor, would be fully refunded. The effect is to give a freer remedy to creditors, not to enlarge the ultimate liability of either party, or to change the relative rights of the survivor and the administrator as respects the several estates over which they preside. 1 Myl. & K. 589.

Such being the law, we must suppose that the legislature had an eye to it when dealing with the relations of a partnership and its members and creditors, We regard the tenth and twelfth articles of Code (1857), 357, as enjoining upon courts of law to treat the debts, contracts and liabilities of a partnership as joint and several; as enabling the

creditor to sue at law the legal representatives of a decedent, as well as the survivor. The statute imposes no additional burden on the decedent's estate. Its effect is to give a remedy at law, whereas, without it, the estate would only have been reached in a court of equity. The statutes do not break down the distinction between the joint and several estates, nor do they propose, by opening the door of the legal tribunals heretofore closed, to introduce a new rule of marshaling the assets of the joint and separate estates, and making distribution between the several classes of creditors.

The creditor may elect between the survivor and the administrator, or he may pursue both, because both estates are bound to him before the statutes were passed. But ultimately, in the final adjustment and balancing of accounts and rights (if both estates are insolvent) the partnership creditors are remitted to the joint funds for either full or partial satisfaction to the exclusion of separate creditors; for there is, as between the partners, an equity which charges the common fund with the payment of the common debts, which a court of chancery will energise to accomplish. It was upon the idea of a substitution to this equity, that creditors (when chancery law was less developed than now) were permitted, when the firm assets were insolvent, to proceed against the administrator of a deceased member.

It remains to be seen what influence the insolvent laws have on the subject. After the claims of creditors have been proved before the commissioner and reported to the court, then (art. 102, p. 450 Code) distribution shall be made to the creditors in proportion to their respective demands; the court ascertaining the proportion and distributive share of each creditor. Our law recognizes no degrees in the dignity of debts. The distinction between simple contract and specialty creditors, as to priority, has been broken down; while equality among creditors is the general policy, it is not universal. In ascertaining the proportion and distributive shares, the court discriminates in favor of advantages and preferences which have attached in favor of par-

ticular creditors. If a specific or express lien adheres to the debt arising or created in the decedent's life-time, it continues after his death. The holder of the vendor's equity, the creditor by judgment obtained in the life-time, and the mortgagee, have each the same priority over other creditors and each other in the distribution of the insolvent estate, which they respectively had in the life-time of the intestate. The statute, therefore, does not contemplate and enjoin an absolute equality among all the creditors, but leaves the entire subject of preferences to be tested and determined by a comparison of the characters of right with which creditors are respectively clothed.

Nor is there any thing in the statute which compels the partnership and separate creditors to stand in precisely the same category. In this case the partnership creditors realized all the joint assets. It is not disputed that this was a proper appropriation. This subject has been heretofore considered in this court, but under statutes not perhaps precisely like those now in force. It could hardly be imputed to the legislature, that they designed to so construe the law (in case of insolvency of the partnership and of decedent's estate), as to allow the joint creditors to absorb the joint property, and then for balances share equally with the separate creditors in the distribution of the separate effects. That would give the former an advantage which they never had in any age of the law, and would defeat equality. The operation of law, or the act of parties, may create a preference. A judgment creditor of a member of a firm cannot take in execution the joint assets so as to acquire satisfaction at the expense of the firm creditors. The sheriff's sale would not pass an undivided moiety of the goods so as to free them from the claims of the partnership creditors and vest in the purchaser a half ownership, if the debtor was an equal partner. The utmost extent of right, which the judgment confers, is to make available in satisfaction the interest of the debtor, after partnership accounts are settled and creditors satisfied. A purchaser under execution becomes

tenant in common with the other partners and acquires a right to the surplus after all debts are paid. Faler v. Jordan, 44 Miss. 283 ; Story's Part. 490, 491, 492, §§ 311, 312. The extent of his right is to the surplus, subject to the superior claims of joint creditors to prior satisfaction. Upon what principle can the accident of dissolution by death give such a creditor any better or more extended right against the joint assets ? If in no event the separate creditors can make claim to the joint assets until all partnership demands have been met; so ought the correlative rule be adhered to, that they shall not proceed against the administrator of the decedent's insolvent estate at the expense of its creditors. 1 Story's Eq. Jur., § 675, note 1. Where both estates are insolvent and a marshaling of assets is necessary, the respective creditors will be paid according to their ultimate rights. The ultimate right is, that joint creditors shall be remitted to the firm effects, and individual creditors shall be confined to the separate estate. If the partnership is solvent, the creditors of the deceased partner have a right to the surplus of the intestate in the joint assets after the partnership liabilities have been discharged. If the estate of the deceased is solvent, the partnership creditors may appropriate whatever surplus there may be after satisfying the claims of individual creditors.

In Dahlgreen v. Duncan et al., 7 Smedes & Marsh. 293, such is conceded to be the well-established doctrine of courts of equity. But it was held, that the then existing statutes changed the rule, so that partnership creditors were let in to share equally with private creditors against the insolvent estate of a deceased partner. The statutes referred to are How. & Hutch. 409, § 80, and the provision making the contracts of copartners joint and several. In substance the former statute is, if the decedent's estate is insolvent, and insufficient to pay all just debts, the estate shall be distributed among all the creditors, in proportion to the sums to them respectively due. The court says, "these two statutes taken together give the creditors of the partnership the same

right to satisfaction out of the (individual) estate which individual creditors have." If the partnership creditors proceed against the surviving partners, their claims will be diminished to the extent they may obtain payment from them." If the purpose of the law "was to make distribution among all the creditors in proportion to the sums respectively due them" that would be defeated by allowing the joint creditors, after getting partial satisfaction out of the partnership effects, to divide with the individual creditors the individual effects, for the balance due them. Such mode of distribution works inequality. The decision referred to was made by a divided court. Chief Justice Sharkey, in his dissenting opinion, interprets the eightieth section, *supra*, as intended to do away the old distinction about the dignity of debts between sealed and parol contracts ; the other statute as merely regulating pleading, making partnership contracts for the purposes of suit several as well as joint. The chancellor, in two cases reported in Freeman's Ch., had adopted the same construction. By comparing the corresponding provisions of the Code of 1857, with How. & Hutch., § 80, it will be noted that the phraseology is somewhat different. After the most mature reflection we cannot bring our minds to the conclusion, that, under existing laws, the distribution in this case ought to be made on the basis laid down in Duncan v. Dahlgreen. We think that the statutes did not mean to interfere with the marshaling and distribution of assets between these several classes of creditors ; that the old and well-established rule has not been abolished ; that the individual creditors of a deceased partner shall not share in partnership assets, except in the surplus after joint liabilities have been liquidated. Nor shall the partnership creditors participate in the distribution of the deceased partner's estate, except in a surplus after separate debts have been paid.

It has been suggested, if the partnership debts are joint and several, then there seems to be no ground to make any difference, in any case whatever, as to payment out of joint

and separate assets.   See note 1 to 1 Story's Eq. Jur.,
§ 676.   But the creditor of a member of the firm is not a
creditor of all the members, or of the partnership, and has,
therefore, no demand against the joint assets.   To permit
him to assert a claim against all the  members and the joint
assets would be to overturn a principle as old as the law of
partnership.   Copartners are not tenants in common.   Their
ownership is, perhaps, more than is implied in joint tenancy.
It is *sui generis*, taking its characteristics from the conven-
iences and necessities of trade and commerce.

We said in Faler v. Jordan, *arguendo*, that the extent of
interest which the  administrator of a deceased partner had
in the partnership property and credits, was to an account
and share of the surplus, after the liabilities are paid, accord-
ing to the articles of copartnership.   That is precisely the
interest which his creditors may claim.

But as we have seen, the partnership creditors had not
only an exclusive prior claim on the common assets, but
each partner was also a  debtor *in solido*, for the common
liabilities.   Predicating upon this right, a creditor could, in
the first *instance*, proceed in chancery against the decedent's
estate.   No question could arise about marshaling assets
and settling priorities, unless the deceased partner's estate
was insolvent.   When that contingency arose individual
creditors could interpose the principle, that they had a prior
·right out of this fund, if it was sufficient for both.   It is
impossible, without overturning established principles, that
absolute, unvarying equality should obtain between these
classes of creditors.   If the partnership property yields nine-
ty cents on the dollar to its creditors, and the private estate
produces only twenty-five cents on  the dollar for its debts,
we have shown that the administrator has not, nor through
him, have the creditors, any color of right to claim any thing
out of the partnership assets, because the interest of the
intestate was limited to the residuum, after joint liabilities
were paid off.   Yet gross "inequality" exists between the·
creditors.   If the joint creditors could come in with their·

balances against the private estate, the inequality would be seriously aggravated. Such would be the effect of the application of the rule in Duncan v. Dahlgreen. So on the other hand the private creditors may receive a large dividend from the administrator, while the joint creditors have got a very small one out of the joint property. Yet in the long run the experience of ages has demonstrated, that more of practical utility is attained, a more equal administration of justice is assured by adhering to the ancient, well-approved principle. Is it not, too, more consonant to the common course of business. A copartnership is formed to aggregate capital, energy and business tact, in a common enterprise as trade and commerce, mining or manufacturing. The public deal with this artificial personage, primarily and mainly, in the credit of its joint name and property, rather than of its individuals and their property. There would be fitness, therefore, in dedicating the community property to the common liabilities. Those who deal with a member in matters wholly apart from the joint business, more especially look to his personal credit and means, and ought, naturally, to have a better claim to that, for satisfaction, than the joint creditors. So that each class of creditors trust, more especially, the joint or private party, as the transaction may be, and each takes the chances and risks of the contingency of insolvency in the one capacity or the other.

The joint creditors have certainly broader rights and remedies than the separate creditors of a partner. Our statute gives him a remedy at law against the individual members, which may be pursued to satisfaction, while his creditors can only be substituted to his interest, or share in the surplus, after joint liabilities are out of the way. An attachment of partnership goods, for the debt of a member of the firm, will be postponed for the benefit of a subsequent attachment for a partnership debt, while an assignment of the separate property for the partnership creditors will be upheld against separate creditors. Allen v. Wells, 22 Pick. 455.

If a partnership creditor has pursued a member of the firm to judgment in a separate suit, he may have all the rights to final process and satisfaction which a separate creditor has, and may acquire the same lien and priority which an individual creditor would obtain by a like proceeding. But if the partnership is dissolved by the death of a member, and, as against him, the firm creditors had instituted no separate suits, and had, therefore, no liens, then, if there be a partial insolvency of the survivor and the decedent, a case has arisen for a marshaling of the two classes of assets, as between the joint and separate creditors, according to the rule we have stated. A most thorough and exhausting research is made into this subject by the supreme court of Maryland, in McCulloch v. Dashiel, 1 Harr. & McGill, 99, examining the cases, English and American; historically and upon principle, concluding, in a case in its features like this, that the individual creditors were entitled to the fund exclusively.

Wherefore, the decree of the chancery court is reversed, and cause remanded, with· instructions to distribute the fund in the hands of the administrator among the creditors of the intestate, to the exclusion of the partnership creditors of Irby and Ward, the costs to be paid out of the fund.