JAMES L. LEVEL, Appellant, v. JOHN FARRIS, Respondent.

Kansas City Court of Appeals, February 8, 1887.

1. PARTNERSHIP—CREDITORS OF HOW SATISFIED—LIABILITY OF INDIVIDUAL PROPERTY·FOR.—It is now firmly settled that partnership creditors shall, in the first instance, be satisfied from the *partnership estate;* and separate or private creditors of the individual partners from the *separate or private.*estate of the partners with whom they have made private and individual contracts; and that the private and individual property of the partners shall not be applied in extinguishment of partnership debts, until the separate and individual creditors of the respective partners shall be paid.

2. ———— APPLICATION OF ESTATE TO SEPARATE AND PARTNERSHIP DEBTS RESPECTIVELY.—The separate estate of a deceased partner must be applied in payment of all principal and interest due to his separate creditors, *before any part of such estate can be touched by the creditors of the firm;* and the creditors of the firm are entitled to be *first* paid out of the partnership assets.

3. ———— CASES OF ENFORCING LIEN AGAINST PARTNERSHIP PROPERTY.· Joint creditors have no actual *lien* against partnership property, and while the partners are living and solvent, can enforce no claim against the joint effects of the partners, except by a common action at law. It is only in cases where there is a *dissolution* by the death or bankruptcy of one partner, that the right of the joint creditor can attach, as a *quasi* lien, upon the partnership effects, as a derivative, subordinate right, under and through the lien and equity of the partners.

4. ———— CONSTRUCTION OF SECTIONS 658, 661, REVISED STATUTES —RIGHT TO PROCEED AGAINST SEPARATE , ESTATE.—The right of partnership creditors to proceed against the separate estate was not first conferred by our statutes (Rev. Stat., sects. 658, 661), making all contracts joint and several, etc., and authorizing suits to be prosecuted on all joint contracts and assumptions of partners as joint and separate liabilities. The effect of the statute is to relieve the joint creditor from resorting to a bill in equity to reach the separate estate, and·to allow him to sue at law, in the first instance,· as if against the joint debtors.

APPEAL from Buchanan Circuit Court, HON. JOSEPH P. GRUBB, Judge.

*Affirmed.*

Statement of case by the court.

This action arose on a proceeding in the probate court of Buchanan county, on an allowance of a claim against the estate of Madison S. Farris, deceased. Said decedent in his lifetime was a partner with one Michael S. Farris, under the firm name of "M. S. Farris & Co." The firm owed the claimant a debt. The partnership was dissolved by the death of said Madison Farris. The partnership assets proving insufficient to pay off in full the indebtedness of the firm, the claimant presented his demand, for the unsatisfied balance, for allowance against the individual estate of the deceased member of the co-partnership.

On trial had in the circuit court, on appeal from the probate court, the cause was submitted to the court on the following agreed statement of facts :

"That during the whole of the year 1882, and thereafter up to the time of the death of Madison S. Farris, the said Madison and Michael S. Farris were partners, doing business in the city of St. Joseph and Platte county, Missouri, under the firm name of M. S. Farris & Co.; that during the time they were so in partnership, to-wit, on the fourteenth day of February, 1882, the said firm borrowed from plaintiff for use in their business, as such partners, the sum of eight hundred and fifty dollars, and gave their note in their firm name therefor, payable to plaintiff twelve months after date, which note is on file with the transcript from the probate court of Buchanan county, sent up in this case ; that on said note there was paid, March 1, 1884, $258.24, and on September 3, 1884, $238.83, and on July 1, 1885, $92.24, the last two payments having been paid by Michael Farris, as administrator of the estate of M. S. Farris & Company. Said Michael S. Farris, as surviving partner of said firm, was appointed and qualified as adminis-

trator of said partnership estate within one year before June 30, 1884, and the balance due on said note was duly presented and allowed by the probate court of Buchanan county, Missouri, against said partnership estate; that John Farris was duly appointed and qualified as administrator of the individual estate of Madison S. Farris, by the said probate court, and within one year before June 30, 1884, and within one year after the grant of the letters of administration on said individual estate, this said note was presented for allowance against said individual estate; that said John Farris has already paid of individual claims allowed against said individual estate, within said first year of his administration, other than the one in controversy, nearly all the money realized from the assets of said estate, and there is not sufficient of said assets to pay, in addition, on the claim in contest a per cent. thereof equal to the per cent. already paid on said other individual claims so allowed; that the individual estate is not sufficient to pay more than fifty cents on the dollar of the individual claims allowed within the first year against said individual estate, exclusive of the note or claim in contest in this suit; that the partnership estate of said M. S. Farris & Company is not sufficient to pay more than fifty per cent. of the claims allowed against said partnership estate; that said Madison S. Farris died on the ——— of ———, 1884.''

The claim was allowed by the court, but subject to the payment of claims of the individual creditors already allowed against the estate. From this judgment the claimant has appealed.

WOODSON & WOODSON, for the appellant.

I. The only question involved in this case is, whether or not the individual creditors of one member of a partnership firm have a priority or lien upon the separate or individual funds of that member who is dead, to the exclusion of the partnership creditors?

We contend, *not, and if not*, the case must be reversed and remanded.

II.   A creditor of one partner only, as to the separate property of such partner, has no priority over a partnership creditor.   *Shackelford v. Clark*, 78 Mo. 491; *Sparham v. Hubbell*, 10 Metcalf (Mass.) 309; *Brock v. Butcher*, 25 Ohio St. 509; *Randolph v. Daly*, 15 N. J. (Eq.) 316; *Gadsden v. Carson*, 9 Rich. (S. C.) 252.

III.   The obligation of partners, *under our law, are several*, as well as joint; consequently the right of the partnership creditor to resort at once to the separate estate of the partner, for satisfaction of a partnership debt, is precisely the same which attends the enforcement of any other several demand.   Rev. Stat., sects. 660, 661; *Shackelford v. Clark*, 78 Mo. 491; *Mason v. Tiffany*, 48 Ill. 392; Story on Partnership, sect. 362; Collyer on Partnership, 560; *Bank v. Cotterey*, 70 Mo. 150.

IV.   It has long been settled in this state that if the demand of the creditor consists of a personal obligation, he is at liberty to enforce it against the general property of the debtor, notwithstanding he may be possessed of security specially pledged and bound for its payment.   *Thornton v. Pico*, 24 Mo. 249; *Savings Association v. Mastin*, 61 Mo. 425.

V.   Upon a *dissolution* of the partnership each partner has a lien upon the partnership effects as well for his indemnity, as for his proportion of the surplus, but creditors have no lien (meaning an independent lien) upon the partnership effects for their debts; their equity is worked out through the equity of the partnership, assenting to the payment of the partnership debts. Parsons on Partnership [3 Ed.] 522; *Shackelford v. Clark*, 78 Mo. 491; 3 Kent's Comm. [5 Ed.] 65; *Murray v. Murphy*, 5 Johns. Ch. (N. Y.) 603; *Bell v. Newlan*, 5 Serg. & R. (Pa.) 78; *Payne v. Matthews*, 6 Paige (N. Y.) 19.

VI. The creditors of a partnership have a preference to have their debts paid out of the partnership funds, before the private creditors of either of the partners; but this preference is, *at law*, generally disregarded; in *equity* it is worked out through the equity of the partners over the whole funds. *Shackelford v. Clark*, 79 Mo. 492; 1 Story's Eq. Juris., sect. 675; *Freeman v. Stewart*, 41 Miss. 138.

VII. It is a settled rule in equity, that if a creditor holds two mortgages—in a case like this, the books would style them *quasi liens*—upon two different estates to secure one debt, and a creditor of the same debtor has a later mortgage (or *quasi* lien), to secure his debt upon one only of the parcels, equity will require of the first mortgagee that he should exhaust the security he has in the parcel not covered by the second mortgage before he shall come upon the latter parcel. 2 Wash. Real Prop. [4 Ed.] 219; *Evertson v. Booth*, 19 Johns. 486; Adams' Equity [7 Am. Ed.] 272; *Ingleheart v. Grau*, 42 Ill. 261; *Clark v. Bancroft*, 13 Iowa, 329.

B. R. VINEYARD, for the respondent.

I. "The estate of the partnership would be settled, *in case of dissolution by death*, entirely on equitable principles, and we should have no doubt that they would require that the claims of the several creditors, and those of the joint creditors should be kept entirely distinct, each having its separate fund, and passing over to the other only in case of a surplus." Parsons on Partnership [2 Ed.] side page 447–8; Story on Partnership [4 Ed.] sect. 363; Collyer on Partnership (Perkins' Ed.) sect. 920; 3 Kent's Commentaries [12 Ed.] side page 65; *Bank v. Bank*, 94 Ill. 278; *Rainey v. Nance*, 54 Ill. 35; *Black's Appeal*, 44 Pa. St. [8 Wright] 503; *Wilder v. Keeler*, 3 Paige, 171–2–3–4; *Murrill v. Neill*, 8 How. 426; *Bond v. Nave*, 62 Ind. 505; *Wayer v. Thornburgh*, 15 Ind. 124; *Gray v. Chiswell*, 9 Vesey,

118; *Jarvis v. Brooks*, 23 N. H. 136; *Crockett v. Crain*, 33 N. H. 542; *Holton v. Holton*, 40 N. H. 77; *Irby v. Graham*, 46 Miss. 425; *McCulloch v. Dashiel*, 1 Harr. and Gill. (Md.) 99; 3 Redfield on Wills [2 Ed.] p. 257, sect. 9; *Phelps v. McNeeley*, 66 Mo. 558; *Cowan v. Gill*, 11 Lea. (Tenn.) 674; *Davis v. Howell*, 33 N. J. Eq. 72; *Toombs v. Hill*, 28 Ga. 371; *Smith v. Mallory*, 24 Ala. 628.

II. *Independent* of our statute (Rev. Stat., sect. 658), making all contracts both joint and several (which it is submitted was only for the purpose of affecting the remedy) equity made all partnership debts, upon the dissolution of the partnership by insolvency, *or the death of one of the partners*, likewise joint and several, so that recourse could be had, in the first instance, against either the surviving partner at law, or the individual estate in equity for a partnership debt. But this could only be done subject to the priorities of the partnership creditors over the partnership estate, and of the private creditors over the private estate; so that our statute, making all contracts both joint and several, made no change in the law as affecting the priorities of the two classes of creditors. Authorities in Division I, especially *Irby v. Graham* (46 Miss. 425).

III. Even under the authority of *Bank v. Keizer*, 2 Duvall (Ky.) 169, s. c., 9 U. S. Digest, first series, page 879, sect. 1376, and *Whitehead v. Chadwell*, 2 Duvall (Ky.) 432, s. c., 9 U. S. Digest, first series, page 879 (both commented on in note to *Brock v. Bateman* in 15 Am. Law Reg. 216, 218), and under the authority of kindred cases cited by opposing counsel, permitting the partnership creditors, after the individual creditors shall have received from the individual estate a share of their claims equal to that which the partnership estate will pay to its creditors, to come into the individual estate as to the balance of the funds therein, and receive from such balance their *pro rata* proportion thereof, appellant has no merit in his appeal. The agreed state

of facts shows that the individual estate of Farris will not pay more than fifty per cent. of the individual claims allowed against it, and that appellant will get, with what he has already received, that per cent. of his claim from the partnership estate. These authorities make distribution of both the partnership and individual estates on the principle that equality is equity. But appellant, although citing these authorities, is unwilling to be limited by this principle. The case of *Brock v. Bateman* (25 Ohio St. 609), and other cases like it, cited by opposing counsel, holding that, where there is no property belonging to the partnership estate the partnership creditor has the same recourse against the individual estate that the individual creditor has, even if it be the law as an exception to the general rule, have no application here. The estate of M. S. Farris & Company had property belonging to it, and appellant has been paid a large proportion of his debt out of it—in fact, as much as the individual creditors can get out of the individual estate. *Brock v. Bateman*, 15 Am. Law Reg. 216; *McCulloch v. Dashiell*, 2 Harr. and Gill. (Md.) 106.

IV. Section 66 of the statute provides for only two classes of partnership demands, whether "presented for allowance or payment against partnership effects, or exhibited for allowance in the manner pointed out for the exhibition of demands against the estates of deceased persons," clearly indicating that such demands should not be paid under the classification against individual estates provided for in another part of the statute, section 184. And as if to cut out all hope of the partnership creditor looking to the individual estate, until the individual creditors shall be paid in full, section 66 provides that in case any demand against the partnership is paid by the executor or administrator of the deceased partner, "such payment so made shall be a charge against the partnership effects, and shall be allowed and

included in the final settlement of the partnership administrator."

V.   All men contract debts and give credit upon the faith of the laws existing at the time, taking into consideration the course of administration which the assets must take upon the contingency of death.   Hence there is no hardship on appellant in this case.

Philips, P. J.—There is no lack of adjudications bearing upon the question involved in this record. They are multitudinous.   An attempted review of them would be as laborious as unprofitable.   It is sufficient to say that from a careful examination of all the authorities accessible to us, I am satisfied that the great weight of authority is in favor of the conclusion reached by the trial judge.

Whatever doubts may have been expressed by some judges as to the rule in England, from the fluctuations of the earlier decisions, there can be little room for question that it is now firmly settled :   That partnership creditors shall in the first instance be satisfied from the partnership estate ; and separate or private creditors of the individual partners from the separate or private estate of the partners with whom they have made private and individual contracts ; and that the private and individual property of the partners shall not be applied in extinguishment of partnership debts, until the separate and individual creditors of the respective partners shall be paid.   *Murray v. Murray*, 5 Johns. Ch. 60 ; see note to *Brock v. Bateman*, 15 Am. Law Reg. 218.

The Supreme Court of the United States, in *Merrill v. Neill* (8 Howard, 421, 426), state this to be the English practice, and it is approved by said court.   Daniel, J., who delivered the opinion of the court, observed :   "The reason and foundation of this rule, or its equality and fairness, the court is not called on to justify.   Were these less obvious than they are it were enough to show

the early adoption and general prevalence of this rule to stay the hand of innovation at this day; at least under any motive less strong than the most urgent propriety."

It is equally certain that this is recognized as the better sustained rule in this country. Chancellor Kent in his Commentaries (vol. 3, p. 65), says: "The joint creditors have the primary claim upon the joint fund in the distribution of the assets of bankrupts or insolvent partners; and the partnership debts are to be settled before any division of the fund takes place. So far as the partnership property has been acquired by means of partnership debts those debts have, in equity, a priority of claim to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the joint fund after satisfaction of the joint debts. The equity of the rule, on the other hand, equally requires that the joint creditors should only look to the surplus of the separate estates of the partners after payment of the separate debts. It was a principle of the Roman law, and it has been acknowledged in the equity jurisprudence of Spain, England and the United States, that partnership debts must be paid out of the partnership estate; and private and separate debts out of the private and separate estate, until private and separate creditors are satisfied; nor have the creditors of the individual partners any claim on the partnership property until all of the partnership creditors are satisfied."

Story on Partnership [2 Ed.] 465, says: "The general rule would seem to be, as it is in bankruptcy, that the joint creditors have a priority of right to payment out of the joint estate and the separate creditors a like right of priority to payment; and the surplus, if any, is divisible among the other class of creditors. In cases where there is both a joint and separate estate the rule may not be unreasonable, as at most it only puts the joint creditors of the partnership to an election; whether

they will proceed against the joint estate, or against the separate estate, where both estates are insolvent."

Parsons on Partnership [2 Ed.] 465, says: "The estate of the partnership would be settled in a case of dissolution by death, entirely on equitable principles; and we should have no doubt that they would require that the claims of the several creditors and those of the joint creditors should be kept entirely distinct: each having its separate fund and passing over to the other *only in case of surplus.* Indeed, as we have already intimated, we consider the decided tendency of common law adjudication to be in that direction. But the question seems to be not so fully settled by authority as we think it to be on principle."

Lindley on Partnership (vol. 2, pp. 1054-5), says: "It is a rule in bankruptcy that the debts of a firm shall be paid out of the assets of the firm, and the separate debts of each partner out of his separate estate; and in administering the insolvent estate of a deceased partner the same rules are now to be adopted. Accordingly the separate estate of a deceased partner must be applied in payment of all principal and interest due to his separate creditors *before any part of such estate can be touched by the creditors of the firm;* and this rule applies even although the surviving partners may be bankrupt. If, indeed, there is not and never was since the death of the deceased any joint estate whatever, and no solvent partner, it seems that the joint creditors may rank *pari passu* with the separate creditors of the deceased against his separate estate. Again, the rule which in bankruptcy precluded one partner from proving against the separate estate of his co-partner, whilst the joint debts are unpaid, also applies in administering the estate of a deceased partner. * * * Whilst, therefore, the separate creditors of the deceased are entitled to be first paid out of his separate estate the creditors of the firm are entitled to be first paid out of its assets."

Such eminent authors do not state inconsiderately

the result or tendency of the adjudications touching so important a matter.

The observations of the great jurist, whose opinions so justly challenge universal respect, Mr. Justice Gibson, in *Bell v. Newman* (5 S. & R. 91), commend themselves to my approval: "Why should any class of creditors, in preference to the rest, be exclusively entitled to the joint fund and concurrently entitled to the separate estate? Equality is equity; and the joint creditors have already an immense advantage over the separate creditors, in being exclusively entitled to the partnership fund: it is the largest; for men in trade usually embark their all in it and seldom have much separate property. And, independent of distributive rights, the joint creditors have a degree of security for their debts and facilities for recovering them which the separate creditors have not; they can sell both joint and separate estate on an execution, while the separate creditor can sell only the separate estate, and the interest in the concern that may remain to the partner after the accounts of the debts and effects of partnership are taken, as between the partners and their creditors, and as between the partners themselves. * * * Concede the present question to the joint creditors and you give them in effect a monopoly of the insolvent's whole estate." He then proceeds to demonstrate by argument and fact that the joint creditors possess no greater merit than the separate creditors as to the manner and extent to which the one estate is created and built up at the expense of the other; that, if anything, the partnership estate is rather created out of the private estate than by the diminution of the latter. He then says: "The claim of each class is, therefore, equally meritorious, both as to the motives for giving credit, and as to creating or increasing the respective funds, out of which each is to be satisfied; if, then, the policy of trade requires that the joint fund shall be appropriated, in the first instance, to payment of the joint debts, justice, equity and con-

science, on the other hand, without interfering with that policy, demand that the separate creditors should, at least, have the miserable advantage of the same priority as regards the separate estate. It is unconscionable that one class should have the exclusive benefit of one fund, and come in concurrently on the other, when both equally trusted to all the insolvent's estate, whether joint or separate, and when there is no reason, peculiarly applicable to either, to presume the credit given by one, had a tendency to create or increase the fund appropriated for the other."

This reasoning is pursued with some amplification, and, to my mind, with irresistible logic, by another jurist, who is taking high rank on the bench, Simrall, J., in *Irby v. Graham* (46 Miss. 425).

There can be neither reason nor good conscience in the rule of law which would permit one man, from the accident of being a creditor of a partnership concern, to collect fifty cents on the dollar of his claim from the partnership assets, to the entire exclusion of the claims of the creditor of the separate estate of the deceased partner, and then allow him to come in on equal terms with the separate creditor against the separate estate, when the latter can only pay a like *pro rata* share to its individual creditors. In other words, to so operate that the joint creditor shall receive seventy-five cents on the dollar, while the separate creditor receives only twenty-five cents on the dollar.

The imperfection, inseparable from any mere human system, may render exact equality impracticable. But that system of administering justice which more universally approaches equality, while establishing known and fixed rules of practical application, is the nearest to the perfection of human reason and uniform justice.

As observed by us, in *Walker v. Deavor* (79 Mo. 679): It is vastly more important sometimes that the rules of law, affecting the rights of contracts, should be

stable than shifting about to find ultimately the basis of wisdom—"Hard cases are the quicksand of the law."

Accordingly, Simrall, J., *supra*, observes : "It is impossible, without overturning established principles, that absolute, unvarying equality, should obtain between these classes of creditors. If the partnership property yields ninety cents on the dollar to its creditors, and the private estate produces only twenty-five cents on the dollar for its debts, we have shown that the administrator has not, nor through him, have the creditors, any color of right to claim anything out of the partnership estate, because the interest of the intestate was limited to the residuum, after joint liabilities were paid off. Yet gross 'inequality' exists between the creditors. If the joint creditors could come in with their balances against the private estate, the inequality would be seriously aggravated. So, on the other hand the private creditors may receive a large dividend from the administrator, while the joint creditors have got a very small one out of the joint property. Yet in the long run the experience of ages has demonstrated, that more of practical utility is attained, a more equal administration of justice is assured, by adhering to the ancient, well approved, principle."

It is confidently asserted by appellant's counsel that the holding of our Supreme Court is opposed to the rule above maintained. The opinion cited is that of Commissioner Martin, in which I concurred, in *Shackelford, Adm'r, v. Clark*, 78 Mo. 491.

There may be expressions in that opinion justifying, measurably, the construction placed upon it by counsel. But when applied to the facts of that case, the conclusion was correct, while there may be dicta in it to which I cannot, on fuller investigation, subscribe to as a general rule.

That was an action, among all the original parties to the contract, to have the court direct that, under a foreclosure sale of a deed of trust, given by an insolvent

member of a co-partnership to secure *pari passu* both the firm creditors and his individual creditors, the proceeds should be applied first to the payment of the separate debt of the grantor. The facts show that there were no partnership assets at all, and that there had been no dissolution of the partnership by the death of one of the parties. It was held that the individual creditor had no such priority over the joint creditors; there being no firm assets, and the other partners were insolvent.

Whereas the rule involved in the case at bar, arises where the partnership is dissolved by the death of one of the partners, and the estate of the partners, as such, is not sufficient to satisfy the joint debts; in which case the matter goes into distribution upon equitable rules or principles. While the law preserves the joint estate as a primary fund for the liquidation of the joint debts, to the exclusion of the separate debts of each individual member, yet the joint creditors have no actual lien on this property. It is only a *quasi* lien "worked out through the equity in favor of the partners." It is a lien, therefore, secured to the creditor by judgment obtained or suit instituted, ordinarily, and is recognized by the courts in administering the estate on the death of one of the partners, or the artificial death of the concern by bankruptcy. Story on Part., sects. 358, 364.

The lien arises only on dissolution by death or bankruptcy. So, Story on Partnership, section 361, says: "The joint creditors of the partnership, while the partners are living and solvent, can enforce no claim against the joint effects of the partners, except by a common action at law. It is only in cases where there is a dissolution by the death or bankruptcy of one partner that the right of the joint creditors can attach, as a *quasi* lien, upon the partnership effects, as a derivative, subordinate right, under and through the lien and equity of the partners."

So, while Commissioner Martin contends that it does

not logically follow from the admitted priority of the partnership creditors upon the partnership funds, that the individual creditors have a like priority as to the separate fund, he is careful to note the exception that the rule is limited to the lifetime of the partners, and the absence of commercial death by bankruptcy; and further on concedes that the priority of the separate creditor as to the separate estate has been recognized by high authority, "but it has been generally applied, after death or bankruptcy, in the marshaling of assets."

He was, as we have already shown, in error in stating that this rule has not been recognized with uniformity in England, as it is by the great weight of authority in this country.

Much stress is placed on those provisions of our statute making all contracts joint and several, and giving a creditor under the joint obligations or assumptions of partners the right to sue and proceed against them jointly or severally. As applied to the facts of that case it, perhaps, was pertinent. But I must be indulged to say that those provisions of the statute are, in my opinion, misconceived, if it be supposed they were in any wise designed to overthrow or interfere with the rule of equity under consideration.

At law the sole right of action by the joint creditors was against the surviving partner; while the ancient doctrine was, that the joint creditors had no claim even in equity against the separate estate of the deceased partner, except where the surviving partner was insolvent or bankrupt. But the courts of equity soon overturned this doctrine, as to the administration of the assets of the individual deceased partner, and held that in equity all partnership debts or obligations are to be deemed joint and several; "and consequently the joint creditors have in all cases a right to proceed at law against the survivors, and an election also to proceed *in equity* against the estate of the deceased partner, whether the survivors be insolvent, or bankrupt, or not.

The consequence is that the joint creditors need not now wait until the partnership affairs are wound up, and a final adjustment thereof is made ; but they may at once proceed, as upon a joint and several contract, in equity against the estate of the deceased partner." Story Part., sect. 362.

So it is manifest that the right of the partnership creditors to proceed against the separate estate was not first conferred by the statute in question, authorizing suits to be prosecuted on all joint contracts and assumptions of partners as to joint and separate liabilities. The obvious intent and effect of the statute is to relieve the joint creditor from resorting to a bill in equity to reach the separate estate, and to allow him to sue at law, in the first instance, as if against the joint debtors. The statute of Mississippi contains a similar provision, and it is held in *Irby v. Graham (supra)*, that it was merely intended to regulate the remedy or pleading, making partnership contracts, for the purpose of suit, several as well as joint; and that it "did not mean to interfere with the marshaling and distribution of assets between these several classes of creditors." Under either system—in equity when the decree was to be made under the statute where the joint creditor comes in at law to have his claim allowed against the separate estate—no question would arise as to priority, except when the estate of the deceased partner was insolvent. When the claim is presented, as in this case, where the separate estate is unable to pay over fifty cents on the dollar, the separate creditor may interpose the equitable principle of adjustment and priority.

It would, in my judgment, be a broad and sweeping office to give to the statute in question, authorizing the party to sue at law instead of in equity, to hold that, therefore, it was designed to take away a substantial and valuable right of defence, founded in equity and good conscience. Such a rule of construction is not recognized in like instances ; and I do not believe the legislature

meant to work such a radical and unreasonable change
by the provisions in question. It would seem to follow,
as a logical sequence, that if the statute respecting joint
and several contracts is to be construed so as to upset
the equity rule respecting priority of the creditors of the
individual estate of the deceased partner, it should like-
wise overturn the rule as to the priority of the joint cred-
itors to the joint estate.

In *Phelps v. McNeely* (66 Mo. 558), Norton, J., dis-
tinctly recognized the existence of the rule contended
for in this opinion. For he said : "In the distribution
of partnership assets, partnership creditors have a pref-
erence over individual creditors, and individual creditors
have a corresponding preference in reference to indi-
vidual property."

It is, therefore, quite apparent that it was not
designed, by the opinion in *Shackelford v. Clark*, to
declare a different rule, under circumstances allied to this
case, or there would have been some reference to the
doctrine, in terms of disapproval, to what the court
seemed to announce as indisputable in *Phelps v. Mc-
Neely*.

Our probate courts are authorized to hear such de-
fence on the presentation of demands for allowance.
Section 192, Revised Statutes, declares : "The probate
court shall have jurisdiction to hear and determine all
suits and other proceedings instituted against executors
and administrators, upon any demand against the estate
of the testator or intestate, and of all off-sets and other
defences, allowed by law, set up thereto by the adminis-
trator or executor."

It is not defences *at* law, but such as are allowed *by*
law — the law of the land, as recognized by statute, the
common law, or equity jurisprudence. *Jeffries v. Fer-
guson*, 87 Mo. 244.

I also quite agree with the opinion of Mr. Justice
Gibson, in *Bell v. Newman (supra)*, that this right is
not to be controlled by the provisions of the statute res-

pecting the classification of demands against estates. To give it such effect would be outside of the reasonable intent of the legislature. "They had nothing more in view than the administration of a single fund among its own peculiar creditors. The first was a matter easily subjected to a set of simple rules ; but the second could not be touched by a hand so violent, without throwing the whole into inextricable confusion, and destroying all justice and equitable distribution."

It follows that the judgment of the circuit court should be affirmed. The other judges concurring, it is accordingly so ordered.