Wile, Weill & Co., Appellant, v. The Denison Clothing Company and Julius Sonksen, Appellees.

**Partnership:** MISAPPROPRIATION OF FUNDS: RATIFICATION: EVIDENCE. One partner cannot pledge the property of the firm to secure the payment of his own debts, without the knowledge or consent of the other partner; and if he does so the party receiving the same is liable to the co-partnership therefor, unless the injured party has ratified the act. In the instant case one partner upon settlement and dissolution of the firm received all of the firm assets, paying nothing to his co-partner at the time, but upon settlement it was found that the co-partner was indebted to him after allowing everything he was entitled to. *Held*, that there was no sufficient proof of ratification, and that he was entitled to recover against a creditor of the co-partner for firm funds misappropriated to the payment of his individual debt.

*Appeal from Crawford District Court.*—Hon. F. M. Powers, Judge.

Saturday, December 14, 1912.

Action for balance on account for goods and merchandise sold and delivered. Defendants Denison Clothing Com-

pany and Julius Sonksen filed separate answers, denying any indebtedness to plaintiff and pleading payment and set-tlement. They also filed equitable answers and counterclaims, which will be referred to in the body of the opinion. Upon the issues joined, the trial court found that plaintiff's account had been settled and paid, and rendered judgment for defendant Sonksen against the plaintiff in the sum of $219.30. Plaintiff appeals.—*Affirmed.*

*Mayne & Hazelton* and *Harding & Kahler,* for appellant.

*Shaw, Sims & Kuehnle,* for appellees.

DEEMER, J.—Plaintiffs are wholesale clothing merchants doing business in the city of Buffalo, N. Y., and their action is for goods and merchandise sold and delivered to the Denison Clothing Company when one C. C. Kemming was doing business in that name, and for goods sold and delivered said company when the firm of Kemming & Sonksen were doing business in that name. Defendants clothing company and Sonksen deny liability for any goods sold Kemming while he was doing business in the name of the company, and admitted only the last two items of plaintiff's account, amounting to $301.50. They also averred that Kemming & Sonksen were in business as a partnership for a time under the name of the Denison Clothing Company, and alleged that during the continuance of this partnership Kemming, without the knowledge or consent of Sonksen, took from the partnership funds the sum of $2,500 and used the same to pay his individual indebtedness to plaintiff. They also averred that Kemming issued partnership checks to plaintiff in payment of his individual accounts, without the knowledge or consent of his partner Sonksen, amounting to the sum of $1,000, and by way of counterclaim asked judgment against plaintiff for the amount of such payments, after deducting therefrom the amount due plaintiff from the firm of Kemming & Sonksen. For reasons

not material to be mentioned, defendant Sonksen was obliged. to forego any claim to the funds received by plaintiff on the checks referred to; and by reason of being unable to show. any knowledge on plaintiff's part of the partnership relations existing between him and Kemming until some time in April, 1908, his counsel now concedes that he is not entitled to have considered any payments made prior to that. date. The amount claimed by him in the district court was reduced to a sufficient amount to pay the firm debt, to wit,.$301.50, and the further sum of $219.50; the two sums being, as he. claims, the amount paid plaintiffs by Kemming after they had knowledge of the partnership arrangement between him. and Sonksen.

There is not much dispute in the facts, and the record discloses the following: For a number of years prior to 1907, C. C. Kemming was engaged in the retail clothing business at the town of Denison, Iowa, under the name of the Denison Clothing Company, and also at the town of Charter Oak, under the name of the Charter Oak Clothing Company. While so engaged, he purchased most of the goods' for the price of which this action was brought. On the 4th day of September of the year 1907, he sold to defendant. Sonksen a one-half interest in the stock of the two clothing companies. This partnership continued doing business in the name of the two companies until May 15th of the year 1908, when the firm was dissolved; Sonksen taking over the business and property at both places. Sonksen paid Kemming, at the time the partnership was formed, the sum of $9,000, but assumed none of Kemming's debts. Upon being admitted into the firm, Sonksen went into the store at Denison, and being without business experience he permitted Kemming to keep the books and the bank account, and to purchase and pay for all goods bought. Kemming was at that time largely indebted for goods purchased before the partnership was formed, and after its formation he paid these debts with money belonging to the partnership. The con-

tract of partnership contained these express provisions: "That the said first party shall pay all indebtedness now owing by the said Denison Clothing Company, and the Charter Oak Clothing Company, and shall be entitled to all sums collected on and from accounts now due the said Denison Clothing Company and Charter Oak Clothing Company. . . . That neither of said partners shall permit said joint stock or his share or interest to be in any way charged, incumbered, attached or taken in execution for his own private and particular debts."

And the agreement of dissolution provided, among other things, that:

The business done by the said Denison Clothing Company and the said Charter Oak Clothing Company since the partnership was formed between C. C. Kemming and Julius Sonksen. the parties hereto, up to the time of the execution of this contract is partnership business, and is to be treated, considered and disposed of as such to the party of the second part as part of this contract and without any other or additional consideration therefor; the profits and losses of said business during said period of said partnership are to be shared equally by the parties hereto, and the debts of said partnership are to be borne, share and share alike, by the parties hereto. . . . It is further agreed that all accounts due and owing to the said firm arising by virtue of the partnership heretofore existing between the parties since September 5, 1907, to this date shall be collected by Julius Sonksen, the surviving partner of said firm, without charge; he to make a monthly accounting of same to the said C. C. Kemming. At the end of sixty days from this date the accounts then uncollected shall be placed in the hands of a special collector to be mutually agreed upon, at a commission of not to exceed 5%, unless mutually otherwise agreed. Reports of collections and settlement are to be made monthly to the said Julius Sonksen and C. C. Kemming, share and share. alike. All of the accounts belonging to said firm remaining uncollected four months after date hereof shall be sold within thirty days thereafter to Julius Sonksen or to C. C. Kemming, depending upon which shall pay the highest price therefor, and the price thus paid shall be divided be-

tween the parties hereto, share and share alike, and the accounts thus bought shall be the absolute property of the person buying and paying therefor.

After the dissolution of the firm, Sonksen paid all the firm debts; but, learning then for the first time, as he claims, that Kemming had paid his prior individual debts from the proceeds of firm property, he refused to pay any balance due to Kemming individually, and insisted that he was entitled to the money paid by Kemming from partnership assets upon his (Kemming's) individual debts from every creditor of Kemming who knew he was using firm property, or assets to pay his individual accounts. Plaintiff's entire account against Kemming individually and the firm of Kemming & Sonksen was $4,559.52, all but $301.50 of which was Kemming's individual indebtedness. During the existence of the partnership, Kemming sent plaintiff five $500 checks, signed "Denison Clothing Co., per C. C. Kemming," and these were credited upon the account. At that time Kemming's indebtedness to plaintiff was evidenced by notes signed by "C. C. Kemming" alone. The testimony shows beyond all controversy that some time early in the month of April, and before the last of the five $500 checks was sent to plaintiff, it had knowledge, through one of the members of the partnership, that defendant Sonksen had become a partner with Kemming; and the plaintiff firm also had knowledge from the checks themselves that these checks were drawn against partnership funds to apply on the individual debt of Kemming. It is true Sonksen knew, during the life of the partnership, that Kemming was signing checks drawn against the funds of the partnership; but, as the firm was buying goods all the time, he testified that he did not know until after the dissolution of the firm that Kemming was paying his individual debts with such checks. He was, he admits, about the store actively engaged in selling of the goods; but he testifies, and no one disputes him, that he knew nothing of the state of the accounts; that he trusted Kemming with the keeping of

the books, the handling of the bank book, and the payment of bills, and did not know of any misappropriation of partnership funds by Kemming. Kemming himself said that he did not deposit any part of the money received from Sonksen for an interest in the business, or any part of the amount received from his individual accounts in the name of the clothing company; and it sufficiently appears that after charging back to Kemming the amount of his misappropriations, and paying the firm indebtedness, instead of his owing Kemming anything, he (Kemming) was indebted to Sonksen.

Plaintiff's chief contention is that Sonksen ratified the misappropriations of Kemming, and thus estopped himself from claiming anything from plaintiff, and that the trial court was in error in not allowing a recovery, at least to the extent of $301.50, being the amount of the firm's indebted. ness. Whether or not there was such a ratification is a question of fact to be determined from all the evidence.

The only testimony relied upon to show ratification is the following, given by Sonksen himself:

I bought him out in May, 1908, and am now the sole owner of the business. In the settlement, when I became owner of the last half of the business, I did not pay over to him personally any money. There was no occasion for doing so, as he had overdrawn already. Q. What is the fact as to his having misappropriated funds of the partnership during the time of the partnership? A. That was it; it was because of that. Q. Was it a fact that there was no cash to be paid by you to him, owing to the fact that he had overdrawn the account of the firm and had appropriated funds without your knowledge or consent? A. That is the reason. I never paid Kemming, himself, a dollar for the last half of his stock. I did not have any knowledge or information as to any misappropriation of the partnership funds by Mr. Kemming until about the time of the dissolution. I am not owing Mr. Kemming anything under the articles of dissolution. I have paid him all that I owe him. I did not pay him personally any money. It was taken up in overdrafts he had made and moneys appropriated without my knowledge or consent.

But this witness also testified that:

I did not have any knowledge or information as to any misappropriation of the partnership funds by Mr. Kemming until about the time of the dissolution. I am not owing Mr. Kemming anything under the articles of dissolution. He is owing me. I have paid him all that I owe him. He is owing me by reason of the settlement. I did not pay him personally any money; it was taken up in overdrafts that he had made and moneys appropriated without my knowledge or consent.

There is nothing here, as we view it, which shows any ratification of the misappropriation, and the record is wanting in any confirmation of the claim of ratification when the checks were sent by Kemming to the plaintiff. The most that could be claimed here is that defendant has not shown any loss to himself by reason of the misappropriation. He testified, it is true, that he paid nothing to Kemming at the time of or after the dissolution of the partnership; and it also is true that he obtained the entire stock of goods theretofore owned by the firm, but he distinctly testified that, giving credit for everything, Kemming was still his debtor; and the records show that he (Kemming) was adjudged a bankrupt in the federal court of the Southern district of Iowa, and afterwards regularly discharged. His trustee in bankruptcy filed an answer and counterclaim in this case, which concluded with this prayer: "Wherefore this defendant prays that he may be decreed, as such trustee, an owner of an undivided one-half interest of whatever judgment may be rendered herein in favor of his codefendant, and for such other and further relief as equity may demand."

From the decree entered in this case, the trustee did not appeal, so that it appears affirmatively that Kemming was still owing Sonksen something, after taking into account all of Kemming's misappropriations; and the trustee in bankruptcy is satisfied with the decree entered in Sonksen's favor, for he did not appeal. There is no merit, then, in the claims that Sonksen ratified the misappropriations

at the time they were made or afterward; and the testimony clearly shows that, taking into account all the misappropriations made by Kemming, Sonksen is still a sufferer, although he has all the assets of the firm, and did not pay Kemming anything for his interest in the business. The law applicable to the undisputed facts is well settled.

A partner cannot pledge the firm credit, or use the firm property to secure or pay his individual debts. *Brewster v. Reel,* 74 Iowa, 508. One partner cannot, without the knowledge and consent of the other partner, use the partnership property or assets to discharge his own personal obligations. If he does so use the property or assets of the copartnership, the party receiving such property, whether money or other property, in the payment of an individual obligation of one of the copartners, upon receiving the same, is liable to the copartnership. *Janey v. Springer,* 78 Iowa, 619; *Blake v. Bank,* 219 Mo. 644 (118 S. W. 643).

In Shumaker on Partnership the rule is stated as follows: "It is a necessary consequence of the existence of the partner's lien that no partner has a right to apply the partnership property to his own individual uses or debts, and, unless the transferee is a *bona fide* holder for value, the property so transferred may be recovered for the benefit of the firm." Shumaker on Partnership, page 178.

This rule is so well established that it is needless to cite other authorities. The only payment made by Kemming to plaintiff, after notice to plaintiff that the checks were drawn against partnership funds, was the last $500 check, issued the latter part of April in the year 1908, and the trial court deducted from the amount of this check the amount of the firm debt, to wit, $301.50, and rendered judgment in favor of Sonksen for the balance, to wit, $198.50, and allowed interest thereon from April 26, 1908, at the rate of 6 per cent. In this there was no error.

The judgment is therefore *Affirmed.*