PARKER *et al. v.* TAPSCOTT *et al.*\*

(Division B. Jan. 25, 1926. Suggestion of, Error Overruled April 5, 1926.)

[107 So. 561. No. 25290.]

1. EQUITY. *Refusal of amendment at close of trial to make bill to cancel, transfer as fraudulent charge violation of bulk sales statute held discretionary (Hemingway's Code, sections 3120-3132).*

Refusal of amendment, at close of trial, to make bill to cancel transfer as fraudulent, because without consideration and made to defeat complainants' judgment, charge a violation of the bulk sales statute, a theory on which the case had not been tried, *held* in the chancellor's sound discretion.

ON SUGGESTION OF ERROR.

2. FRAUDULENT CONVEYANCES. *Bill to set aside sale of stock of goods under Bulk Sales Law should specifically set out facts that show failure to comply therewith, and general allegation that stock of goods was sold to defraud creditors is insufficient (Laws 1908, chapter 100, section 1 [Hemingway's Code, section 3129]).*

   A bill to set aside a sale of a stock of goods in bulk, under section 3129, Hemingway's Code (Laws 1908, chapter 100, section 1), should specifically set out facts that show a failure to comply with the statute. A general allegation that the stock of goods was sold to defraud creditors is insufficient.

3. EQUITY. *Refusal to permit bill filed to set aside sale of stock of goods as fraud on complainant to be amended, so as to charge violation of Bulk Sales Law, if facts developed on trial do not make case thereunder, is not reversible error (Laws 1908, chapter 100, section 1 [Hemingway's Code, section 3129]).*

   It is not reversible error for a chancellor to refuse to permit a bill filed for the purpose of setting aside a sale of a stock of goods as a fraud on the rights of the complainant to be amended, so as to charge a violation of section 3129, Hemingway's Code, if the facts developed on the trial do not make a case under the statute.

4. FRAUDULENT CONVEYANCES. *Bulk Sales Law held not to apply to sale of stock of goods by one partner to another in same business (Laws 1908, chapter 100, section 1 [Hemingway's Code, section 3129]).*

   Section 3129, Hemingway's Code (section 1, chapter 100, Laws 1908), does not apply to a sale of stock of goods by one partner to another in same business.

---

*Corpus Juris-Cyc References: Appeal and Error, 4 CJ, p. 946, n. 10. Equity, 21 CJ, p. 516, n. 17; p. 517, n. 24. Fraudulent Conveyances, 27CJ, p. 875, n. 36, New; p. 882, n. 20; p. 891, n. 95; Statutory requirements on sale of stock of goods in bulk, see notes in 2 L.R.A.(N.S.) .331; 20 L.R.A. (N.S.) 160; L.R.A. 1915E, 917. 12 R.C.L., p. 525; 2 R.C.L. Supp., p. 1443; 4 R.C.L. Supp., p. 761; 5 R.C.L. Supp., p. 649.

APPEAL from chancery court of Lee county.

HON. ALLEN COX, Chancellor.

Suit by J. A. Parker and others against C. A. Tapscott an others. From an adverse decree, complainants appeal. Affirmed.

*Leftwich & Tubb,* for appellants.

I *The pleadings.* We submit that the bill and joint answers of defendants filed in this cause themselves make out a case under the Bulk Sales Law is favor of the complainants. As we understand the Bulk Sales Statute, all that the creditors of the seller need to do is to levy on and attach the goods, or file a bill as in this case, to clear away the colorable ownership outstanding against them. If the defendant claims to have bought the goods, then he must plead and prove full compliance with the Bulk Sales Statute.

This whole matter we are now dealing with is put to rest in *Moore Dry Goods Co.* v. *Rowe,* 97 Miss. 775; *Moore Dry Goods Co.* v. *Rowe,* on Suggestion of Error, 99 Miss. 30. The result of the decision in this case, which is supported by numerous decisions from one side of the land to the other, is that when the sale is shown as is confessed here and is proved beyond question from Tapscott to Miss Young, the burden is on Miss Young to extricate herself at once from the purchase by affirmative pleadings and proof and the only avenue of her escape from responsibility for the goods which she took over is a full compliance with the statute, sub-sections (a), (b) and (c), 27 C. J. 876, 2nd column.

This compliance Miss Young and Tapscott both fail to prove and, therefore, the goods were found in the hands of Miss Young when they were really the goods of Tapscott and were liable to the subjection of the complainants for their judgment debt which gave them a lien against the goods. Of course, as this court has decided, the creditor may attach the goods sold in violation of the Bulk Sales Law or immediately proceed against the seller and the purchaser jointly, or pursue both remedies. *Peter Branch Int. Shoe Co.* v. *Gunn,* 121 Miss. 679.

The effort on the part of Mr. Tapscott and Miss Young to show good faith and the payment of value is futile. *Moore Dry Goods Co.* v. *Rowe,* 97 Miss. 775. It will be

observed that the legislature of this state adopted the Tennessee statute and in the case of *Neas* v. *Borches,* 109 Tenn. 398, 97 A. S. R. 851, the supreme court of Tennessee sustained the act and since this statute was adopted from Tennessee the decisions of her courts are binding upon the Mississippi courts.

II. *Sales of one partner to another.* There can be no question under the decisions of the supreme court of Tennessee where our Bulk Sales Law originated, nor under the decisions of the state of Mississippi that a sale from one partner to another is void under the Bulk Sales Law as much so as if the sale were to a third person. Individual creditors of one partner are entitled to the statutory notice of the sale and purchase of his interest in a stock of goods by a co-partner. *Gilbert* v. *Ashby,* 133 Tenn. 370, 181 S. W. 321; *Daly et al.* v. *Sumter Drug Co. et al.,* 127 Tenn. 412, 155 S. W. 167; Ann. Cas. 1914-B 1101.

III. *Who are the creditors?* It is useless to recount the requirements under section 3129, Hemingway's Code, making the sale valid but under sub-section (c) it is required "that the purchaser shall have in good faith notified personally or by mail each of the seller's creditors of whom he has knowledge," etc. We refer this court to the sub-head "Bulk Sales Acts," 27 C. J. p. 873.

The supreme court of Tennessee has again dealt with this subject and has held "that since partners are jointly and severally liable for the partnership debts upon a sale in bulk by an individual, creditors of a partnership in which he was a member are creditors entitled to notice." *Mahoney-Jones* v. *Sames,* 128 Tenn. 207, 159 S. W. 1094; *Gilgert* v. *Ashby,* 133 Tenn. 370.

The fact in the instant case that at the time of the pretended sale the claim of the complainants had not been reduced to judgment cuts no figure. *Newcomb* v. *Montague,* 205 Mich. 80, 89, 171 N. W. 433; *George Kraft Co.* v. *Heller,* 188 Ind. 612, 125 N. E. 209; *Ames* v. *Dor-*

*ron,* 76 Miss. 187, 71 A. S. R. 522; *McGinnis* v. *Mills,* 78 Miss. 52.

When a motion to exclude the complainant's testimony on the Bulk Sales Act was made after the testimony had gone in without objection, complainant's disclaimed that an amendment was necessary, but asked to be allowed to amend their bill attacking the sale under the Bulk Sales Statute. This motion was first made orally and finally put into writing.

It was reversible error for the court to refuse to allow the amendment to be made and to permit the pleadings to conform to the proof adduced in the case. By this argument, however, we must not be held to intimate that such an amendment was at all necessary.

*W. A. Blair,* for appellees.

This court can see that the issue involved as presented by this bill was not the Bulk Sales Law, for nowhere in said bill does the pleader ever refer to or give intimation that he expected to rely upon the Bulk Sales Law, but they predicated their case solely and only upon the fact of general fraud and that the sale was a sham. See 27 C. J., p. 891 under Fraudulent Conveyances, which deals with the Bulk Sales Law under section 905, par. 5, p. 891. A creditor who wishes to avail himself of the Bulk Sales Statute must plead it and by proper averments bring himself within its provisions. *Vinson* v. *Johnson,* 167 Pac. 1014; *Singletary* v. *Boerner-Morris,* 112 S. W. 637. See also 27 C. J., p. 875, par. 883.

The lower court speaking through Chancellor Cox says that this Bulk Sales Law was not the issue presented and found that there was no fraud. Of course, the court's decree, or rather his opinion, stated that if the appellant wanted to bring a suit and present the Bulk Sales Law as an issue, it would have to be done in a different suit where the issue could be met and fairly presented to the court by both sides.

*E. O. Sykes,* for appellant, on suggestion of error.

I. *Are the allegations of the bill sufficient to permit complainant to invoke the Bulk Sales Law?* Section 3129, Hemingway's Code. It is charged that Tapscott was the owner of this stock of merchandise; that complainant was his creditor; that in order to defeat the collection of this debt Tapscott wrongfully and fraudulently pretended to sell the stock of goods to Miss Rosa Young. We have the judgment creditor and a wrongful and fraudulent sale of the stock of merchandise in bulk for the purpose of defeating the collection of this debt.

Under the law in Mississippi, we submit that the sole allegation of a sale of a stock of merchandise in bulk, that at the time the sale was made the seller had creditors, and the creditors complaint about this sale are sufficient allegations to show a non-compliance with the Bulk Sales Law.

However, the Bulk Sales Statute makes a sale in bulk *prima-facie* fraudulent, thereby doing away with any further specific allegations of fraud or the proof of any other fact save the sale alone. This is what this court has expressly decided in the *Rowe case,* 97 Miss. 775, and 99 Miss. 30. We submit that the Bulk Sales Law is necessarily invoked in any suit by a creditor of the seller when the bill alleges a sale in bulk.

There is another feature of the case wherein we submit that the learned chancellor erred and that is that all of the testimony about this sale in bulk and the non-compliance with sections (a), (b) and (c) of this law went in without objection on the part of the defendants. Complainant was of the opinion that the allegations of the bill made out a *prima-facie* case of a violation of the Bulk Sales Law. They went further and without objection on the part of the defendants proved non-compliance with these sections of the law. We submit that it was the duty of the defendants to have objected at the proper time to this testimony when it was offered. Had this objection been made, under the ruling of the court

it would have been sustained. Then certainly at that stage of the trial the court would have permitted the bill to be amended by inserting a specific allegation of a violation of this section of the code. The defendants could either have then proceeded with the trial or asked the court to continue the case. All of the testimony here went in without objection. In fact, we think that the testimony shows that the defendants had introduced all the testimony they possibly could on this issue. In view of these facts, we think the court should have permitted this amendment to be made to further the ends of justice even after the testimony was concluded. He could then, of course, have continued the case or permitted the defendants to introduce any further testimony on this issue.

As we view this record, it shows a non-compliance with the Bulk Sales Law. We think the whole case is fully developed and that under it the appellant is entitled to a decree.

*W. A. Blair* and *Francis S. Harmon,* for appellees, answering memorandum from the court in response to suggestion of error.

I. *This court quite properly held that the allegations of the bill of complaint were not sufficient to permit complainants to invoke the Bulk Sales Law, section 3129, Hemingway's Code.* The bill is shot through and through with repeated allegations that the purported sale was only a pretense and that the change of ownership was merely nominal and was brought about solely as a fraud upon Tapscott's creditors. Having properly lost their cause in the trial court and in this court, appellants now grasp at the last slim straw available to them and insist that by the allegations of the bill they sought to invoke and can now successfully invoke section 3129, Hemingway's Code. It is impossible to reconcile the language of the bill with its allegations of pretense and sham with the bald statement in the statute that a "*sale of a*

stock of goods . . . shall be presumed to be fraudulent and void, etc. . . ." Certainly, this court diagnosed the case correctly.

In further support of the correctness of this statement from the opinion of the court, let us consider the purpose of the Bulk Sales Statutes and the canons of construction applicable thereto. The evil sought to be corrected was the tendency or practice of merchants who were heavily indebted to make secret sales of merchandise in bulk for the purpose of defrauding their creditors. The initiative was taken by wholesalers throughout the country, but the statutes are broad enough to cover any creditors of the business. 12 R. C. L., p. 525, sec. 54; *Escalle* v. *Mark,* 5 A. L. R. at 1514, 183 Pac. (Nev.). The Bulk Sales Statute in Mississippi creates a conclusive presumption of fraud when the conditions laid down therein have not been fulfilled. *Moore Dry Goods Co.* v. *Rowe,* 97 Miss. 775, 53 So. 626; on suggestion of error, 99 Miss. 30.

The rule is laid down in a number of cases that since these statutes are penal in their character, in derogation of the common law, and the right to alienate property without restriction, they should be strictly construed. *Missos* v. *Marks et al.* (Wis., 1924), 197 N. W. 196; *Bank of LaGrange* v. *Rutland* (Ga., 1921), 108 S. E. 821; *Smith* v. *Boyer* (S. C., 1922), 112 S. E. 71; *Swift* v. *Templos* (N. C.), 7 A. L. R. at 1583, 101 S. E. 8, 25 L. R. A. (N. S.) 758.

It is well settled that these severe laws must be pleaded and that "a creditor who wishes to avail himself of the statute must by proper averments bring himself within its provisions. *Singleterry* v. *Boerner-Morris Candy Co.,* 129 Ky. 556, 112 S. W. 637; *Benson* v. *Johnston,* 165 Pac. (Ore., 1917) 1001.

Instead of the pleading being predicated on the Bulk Sales Statute, complainant's entire theory was that Tapscott pretended to transfer his interest in the goods in

fraud of his creditors, while appellees' answer denied the pretense and set up an actual sale, open and above board, notice of which was published to the world and by which a valuable consideration was given and received.

II.  *The motion to amend at the close of the trial was properly refused and such refusal, being within the sound discretion of the chancellor, is not erroneous.*  Griffith's Ch. Practice (2d Ed.), sec. 393, p. 403; *Noxubee County v. Long,* 106 So. 83.

III.  *Even if the pleadings are broad enough to enable the Bulk Sales Statute to be invoked, said statute is inapplicable on the facts of this case.*  A.  Individual creditors of the selling partner cannot invoke the statute. *Fairfield Shoe Co.* v. *Olds* (Ind., 1911), 96 N. E. 592; *Taylor* v. *Folds* (Ga., 1907), 58 S. E. 683; *Whitehouse* v. *Nelson,* 43 Wash. at 177, 86 Pac. 174; *Maskell* v. *Alexander,* L. R. A. 1918-C 929, 100 Wash. 16, 170 Pac. 350; 2 Williston on Sales (2d Ed.), sec. 643, p. 616.

B.  Appellants are not *"creditors"* within the meaning of the statute.  The testimony in the case, taken most favorably for the appellants, is to the effect that Tapscott sold his interest in the stock of goods to Miss Young on January 10, 1921; that is to say, nearly a year before a decree was had in the suit over the pine timber.  We insist, therefore, that at the time this sale was consummated in January, 1921, Tapscott was not a debtor within the meaning of this act.  The claim of Parker Brothers, growing out of the timber contract, was an unliquidated claim, a mere contingent liability, and did not become fixed as against Tapscott until the court by its judgment in April, 1922, found him liable under the timber contract.  If he was a "debtor" at the time of the sale, then the Bulk Sales Statute is a patent absurdity. How could any merchant satisfy the provisions of this statute if every person having a contingent claim against

him is to be classed as a creditor? See *Trimble* v. *Covington Grocery Co.* (Va., 1917), 72 S. E. 724.

Applying strictly the rule of construction to the Bulk Sales Statute, the court cannot hold that the legislature clearly intended for individual creditors of a retiring partner to avail themselves of its provisions; and even if such creditors can invoke this law, these appellants, having only a contingent claim which had not been reduced to judgment at the time of the sale, are not creditors within the meaning of the act. We, therefore, submit that the opinion of this court is correct.

*E. O. Sykes,* for appellants, answering memorandum from court on suggestion of error.

I. *Are the allegations of the bill sufficient to permit complainants to invoke the Bulk Sales Law?* Under our law it is unnecessary to refer directly to this statute, but is simply sufficient to allege a sale or a pretended sale either in bulk or of any portion of the stock of merchandise otherwise than in the ordinary course of trade. Our bill does that, and in addition thereto alleges facts, which if proved, would show actual fraud, disconnected from this statute.

An analogy might very properly be drawn with what has to be alleged under this statute and what has to be alleged in a declaration where a running train has injured or killed a human being or an animal. Under the *prima-facie* railroad statute, one can allege as many specific acts of negligence as he so desires. He can then prove that the injury occurred because of the running train and by virtue of that statute he has made out a *prima-facie* case, yet in his declaration he has nowhere referred to the statute.

II. *The Bulk Sales Law is applicable to the individual creditors of a member of a firm.* The *Rowe case,* 97 Miss. 775; *Shoe Co.* v. *Gunn,* 121 Miss. 696; *Daly* v.

*Sumpter Drug Co.,* 127 Tenn. 412. The supreme court of Tennessee has in three cases decided that an individual creditor of the seller is protected by this law. *Jones Co.* v. *Sams Bros.,* 128 Tenn. 207; *Gilbert* v. *Ashley,* 133 Tenn. 370; *Howell* v. *Howell,* 142 Tenn. 31. Other cases to the same effect are: *Bank* v. *Van Allsburg,* 165 Mich. 524; *Lakelos et al.* v. *Hutchinson Bros.,* 129 Md. 300; *F. & D. Co.* v. *Thomas,* 133 Md. 270; *Rabalsky* v. *Levison,* 221 Mass. 289; *Hartwig* v. *Rushing,* 93 Ore. 6; *Galbraith* v. *Bank,* 36 Okla. 807; *Touris* v. *Karantazalis,* 156 N. Y. S. 526.

III. *Is a sale by one partner of his interest to another partner a violation of this law?* The language of section 1 of our statute plainly includes within its terms a sale by one partner to another. This particular question has been decided favorably to our contention by the supreme court of Tennessee in *Daly* v. *Sumpter Drug Co.,* 127 Tenn. 412; *Gilbert* v. *Ashley,* 133 Tenn. 370; and *Howell* v. *Howell,* 142 Tenn. 31. Another well-reasoned case is *Marlow* v. *Ringer* (W. Va.), L. R. A. 1917-D 619.

IV. *Counsel further raises the point that appellants are not creditors within the meaning of the statute.* The record in this case shows that the claim of these appellants against Tapscott arose "*ex contractu*" and not "*ex delicto.*" Bouvier's Law Dictionary defines a creditor as follows, "A creditor is he who has a right to require the fulfillment of an obligation or contract." See sections 121, 125, 313, Hemingway's Code. Our court has uniformly held under these statutes that a simple contract creditor has the right to maintain any of these suits. *Shoe Co.* v. *Gunn,* 121 Miss. 679.

We ask that the opinion of the court be set aside and a decree granted appellants for the amount of their claim.

Argued orally by *C. L. Tubb,* for appellants.

HOLDEN, P. J., delivered the opinion of the court.

The appellants filed their bill against the appellees to cancel the transfer of a certain stock of goods, alleged to have been fraudulently transferred by appellee Tapscott to Miss Rosa Young; that the sale of the goods was wrongful, and was pretended and resulted from a conspiracy on the part of the parties to defeat appellants in the collection of a certain judgment they had against Tapscott. After a full hearing of the facts, the chancellor decided the transfer of the goods in the store was in good faith and valid. From this decree the appeal is prosecuted.

The pleadings and proof in the case went upon the theory that the sale of the stock of goods was a sham, and was for the purpose of defeating the collection of a judgment due appellants. In other words, the complainant prosecuted his cause on the ground that the appellee, Tapscott, had fraudulently transferred his interest in the stock of goods, so that his creditor, the appellant, could not levy against the goods to satisfy a judgment for about one thousand five hundred dollars.

After all the evidence had been heard by the chancellor on the issue of whether or not the transfer of the stock of goods was fraudulent, without consideration, and was for the purpose of defeating the judgment of the appellant, and while the arguments of counsel were being made to the court, the question of whether our Bulk Sales Statute (Hemingway's Code, sections 3129-3132) was involved in the case arose on motion before the chancellor. Up to this time the Bulk Sales Statute had not been specifically mentioned in the case by the pleadings or the proof. At this juncture of the trial, which was practically over, except a part of the argument was yet to be heard, the appellant moved the court for permission to amend his bill, so as to charge that the Bulk Sales Statute had been violated, and that the sale of the stock of goods should, for that reason, be canceled.

Objection was made to the amendment, and the court sustained the objection, upon the ground that the bill did not charge a violation of the Bulk Sales Statute, and that to allow the amendment at that stage of the trial would be to change the character of the lawsuit, and require the defendant to meet a case which the pleading did not present. The appellant contends that under the allegations of his bill it was proper for him to show a violation of the Bulk Sales Statute without having alleged its violation, and that the proof offered was sufficient to bring the case within the statute; but that, if mistaken in this, that then the court erred in not allowing him to amend the bill, so as to come within the Bulk Sales Statute.

We are unable to agree with the contention of appellant. The pleadings and proof do not bring the case within the Bulk Sales Statute, nor was the cause tried upon that theory. It is clear from the record that a violation of the Bulk Sales Statute had not been expressly presented until the case was closed and the argument begun before the chancellor, when the statute was mentioned for the first time. The cases cited by appellant were brought under the Bulk Sales Statute. It was within the discretion of the chancellor to refuse to allow the complainant to amend his bill at the close of the trial, and we see no abuse of discretion in that regard. Griffith's Mississippi Chancery Practice, section 393, chapter 403, and cases cited therein.

The appellant was an individual creditor of the appellee. The debt claimed was not for goods sold to the appellee partnership, but was a judgment for an individual claim against appellee. We do not decide whether the Bulk Sales Statute is applicable to individual creditors, because it is unnecessary to do so in the case before us. The decree of the lower court is affirmed.

*Affirmed.*

ON SUGGESTION OF ERROR.

ETHRIDGE, J.

We are of opinion that the bill of complaint in this case did not allege a case within the Bulk Sales Statute. Chapter 100, section 1, Laws 1908; Hemingway's Code, section 3129. The allegations of the bill with reference to the stock of goods is as follows:

"Complainant respectfully represents that the said C. A. Tapscott was, at the time of the filing of the said bill, the owner of a large stock of merchandise and a store which he was conducting at the town of Nettleton, at the time buying and selling large quantities of goods, the sole owner of the same, as your complainants are informed and believe, and that he so remained until very shortly before the final trial of said cause, when to defeat your complainants in the collection of their just obligation, and defeat the collection of the decree, which they were then certain to recover against him in right and justice, wrongfully and fraudulently pretended to sell, make over, and transfer to Miss Rosa Young, his sister-in-law, the pretended ownership and control of said stock of goods and store, though the said C. A. Tapscott all the while remained and still remains in management of the said business, and your complainant charges on information and belief that he is still in equity and good conscience the owner of the same."

The statute (section 3129, Hemingway's Code; Laws 1908, chapter 100, section 1) provides that a sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least five days before the sale, (a) the seller shall have made a full and detailed inventory, showing the quantity, and, so far as can be done by the exer-

cise of reasonable diligence, the cost price to him of each article sold; and (b) the purchaser shall have in good faith made full and explicit demand of the seller for the name, place of residence, and business and post office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and (c) the purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge or with the exercise of reasonable diligence could have acquired knowledge, of the proposed sale, and of the cost price of the merchandise proposed to be sold, and of the price to be paid therefor by the proposed purchaser.

This statute is in derogation of the common law and of the right to contract, and to bring a case within the statute the proposition which makes the sale fall within the statute should be averred, showing in substance the failure of the seller and purchaser to comply with the statute. The allegation as made is one of the ordinary fraudulent conveyance or creditors' bill allegation, and does not aver the failure of the defendant to comply with the statutory requirements. We think good pleading requires the pleader to set forth with sufficient certainty and clearness the facts constituting violation of this section, and that the court did not err in holding that the case made was not within the fraudulent sales of merchandise statute, *supra.*

It is also insisted that we erred in holding that the court did not commit error below in refusing to permit complainant to amend the bill after the evidence was closed in the court below. While ordinarily a party will be permitted to amend his bill, so as to conform to the case made by the evidence, still it is not reversible error to refuse to permit the bill to be amended, when the statute would not be applicable to the case, were the bill properly amended, so as to allege a violation of the statute.

In our opinion the statute does not apply to a sale of a stock of merchandise from one partner to another, and

therefore that the court below did not err in refusing the amendment. The suggestion of error will therefore be overruled.

*Overruled.*