PETERSON COMPANY, Appellant, v. F. B. FREEBURN et al.,
Appellees.

**SALES:** Bulk Sales—Nonapplicability of Statute. The Bulk Sales Act
1   has no application to a sale of a partnership interest to a copartner.

**STATUTES:** Construction—Common-law Restrictions. The common-
2   law rule that statutes in derogation of the common law must be
    strictly construed has no application in this state.

**STATUTES:** Construction—Inherent Limitation. Principle reaffirmed
3   that the construction of a statute by the courts may not be carried
    to the point of legislation.

Headnote 1:   27 C. J. pp. 882, 884 (Anno.)   Headnote 2:   36 Cyc. p.
1179.  Headnote 3:  36 Cyc. pp. 1103, 1175.

Headnote 2:  25 R. C. L. 1078.

*Appeal from Cherokee District Court.*—B. F. BUTLER, Judge.

OCTOBER 25, 1927.

Action on three promissory notes, executed by F. B. and
Elizabeth Freeburn to the Peterson Company, combined with
special count for relief in the nature of an accounting under
Bulk Sales Law, because of sale by said two partners of their
interests to a third partner, Frank Dubes. Defendant Dubes
filed motion to strike said count because not within the pur-
view of said law. The motion was sustained, and plaintiff ap-
peals.—*Affirmed.*

*Whitney & Whitney*, for appellant.

*Molyneux, Maher & Meloy*, for appellees.

KINDIG, J.—Four counts are declared upon in the petition.
Three state separate causes of action on individual promissory
notes signed and delivered September 10, 1925, by F. B. and

1. SALES: bulk
sales: nonappli-
cability of
statute.

Elizabeth Freeburn to appellant. These issues
do not in any way involve appellee Frank
Dubes, except in the manner and way alleged in
Count 4. That is to say, the purpose of the last named count is

to invoke the benefits of Sections 10008 to 10012, inclusive, of the Code of 1924, known as the Bulk Sales Law. Predication of appellant's case at this point is based upon the following facts: On September 10, 1925, F. B. Freeburn, Elizabeth Freeburn, and Frank Dubes entered into a copartnership at Aurelia to, and did thereunder, engage in the mercantile business from said date until September 10, 1926, when said relationship was dissolved because of the sale of their interest in said firm by F. B. and Elizabeth Freeburn to appellee Frank Dubes, without in any way attempting to meet, or in fact complying with, said legislative requirement, although, at the time of said transaction, the Freeburns were personally indebted to appellant. Whereupon, appellee Dubes appeared, and filed a motion to dismiss said Count 4, naming, among others, the ground that said legislation does not apply to a deal whereby one partner, for a consideration, acquires rights and privileges of the other members of the concern. This motion was sustained by the district court, and for alleged error in so doing this appeal was taken.

Section 10008 of said Code provides:

"The sale, transfer, or assignment, in bulk, of any part or the whole of a stock of merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferor, or assignor, shall be void as against the creditors of the seller, transferor, or assignor: Unless * * * " certain prerequisites are met.

Contention is earnestly made that the boundaries of the quoted provisions include a transaction wherein one copartner sells his interest to another. Reasons asserted in support of the position are that, if the contrary is true, the doors will then be open to fraud and abuse, for behind such protection the unscrupulous would hide the proceeds of such conveyance, and place it beyond the reach of creditors; and especially is this unfair, according to the argument, when loans are extended to the separate person upon the strength of his rights in the community business. We are constrained to disagree with this suggestion, and reach the opposite conclusion.

By this court the precise question has never before been determined. Foundation for our decision must be placed upon the act itself. Underlying the enactment, so far as concerns the

present discussion, is that portion confining application to "any
part or the whole of a stock of merchandise
* * * ." "Bulk Sales Law," being in deroga-
tion of the common law, appellee suggests must
be strictly construed. Manifestly, that limited interpretation is
contrary to Section 64 of the Code of 1924, which reads as
follows:

2. STATUTES: con-
struction:
common-law
restrictions.

"The rule of the common law, that statutes in derogation
thereof are to be strictly construed, has no application to this
Code. Its provisions and all proceedings under it shall be
liberally construed with a view to promote its objects and assist
the parties in obtaining justice."

*Chiesa & Co. v. City of Des Moines*, 158 Iowa 343. Liber-
ality, safeguarded by the legislature, however, does not warrant
the supplying of words where none exist. *State ex rel. Davitt
v. Crow*, 186 Iowa 497. So, too, indulgence in
the doctrine of generous construction cannot be
permitted to impose a liability not otherwise
existing, or work a forfeiture by extending the meaning of
words so far that it amounts to the addition of new ones. *Caster
v. McClellan*, 132 Iowa 502. See, also, *State ex rel. Shaver v.
Iowa Tel. Co.*, 175 Iowa 607; *Brown v. Bell Co.*, 146 Iowa 89.
Thus confined in the premises, our further course is well
marked. "Part or the whole" directly modifies "stock," which
necessarily means the merchandise or thing itself,—in other
words, the actual and tangible. A partner does not own the
"whole or a part" of the goods or other items of personalty.
*Tuller v. Leaverton*, 143 Iowa 162; *Hirsch, Wickwire Co. v.
Denison Cloth. Co.*, 158 Iowa 117; *Wile, Weill & Co. v. Denison
Cloth. Co.*, 158 Iowa 109. We said, in *Tuller v. Leaverton*,
supra:

3. STATUTES: con-
struction: in-
herent limi-
tation.

"Neither partner separately owns, nor has the exclusive
right of possession of, any particular articles of partnership
property or aliquot part thereof. The real ownership and legal
title are vested in the firm, so that the sale of one half of the
stock did not pass title to the stock itself, but to such share as
remained after the settlement of the partnership debts and
settlement of partnership accounts."

Interest of a copartner is always contingent upon the pay-
ment of firm debts, accounting between the parties themselves,

and the costs and expenses of final dissolution. Joint ownership does not exist, but rather a community "property" in the assets remaining after the ultimate accounting.

Other states afford us assistance in crossing this untraveled path; for we find that it has elsewhere been held that said law does not apply to the facts here involved. *Taylor v. Folds,* 2 Ga. App. 453 (58 S. E. 683); *Yancey v. Lamar-Rankin Drug Co.,* 140 Ga. 359 (78 S. E. 1078); *Fairfield Shoe Co. v. Olds,* 176 Ind. 526 (96 N. E. 592); *Parker v. Tapscott,* 142 Miss. 768 (107 So. 561); *Schoeppel v. Pfannensteil,* 122 Kan. 630 (253 Pac. 567); *Dakota Tr. & Sav. Bank v. Hanson,* 5 Fed. (2d Series) 915 (8th Circuit). In *Fairfield Shoe Co. v. Olds,* supra, the Indiana court said:

"It is clear that a sale by a partner of his interest in 'a stock of merchandise or merchandise and fixtures' is not a sale in bulk of any part or the whole of such stock * * * and the courts will not, by construction, extend it so as to include such sales * * * . It is true that Section 2 of said act provides that 'sellers * * * and assignors * * * shall include * * * copartnerships,' but there was no 'sale in bulk' by a copartnership or to a copartnership."

So in the case at bar, there was no sale of a "part or the whole" of the "stock" of Freeburn & Dubes, but rather, the negotiation involved that "community interest" before mentioned, and nothing more. Code of 1924, Section 10009, contains this definition:

"Sellers, transferors, and assignors, purchasers, transferees, and assignees, under this chapter, shall include * * * copartnerships * * * ."

Nevertheless, appellees', rather than appellant's, position is strengthened thereby. Immediately, "partnership" is coordinated with and distinguished from "individuals." Truly, if a "partnership" sells, the prerequisites of the law must be met, in the event creditors are affected. Here, the "partnership" had no debts, and had a right to sell, regardless of the obligations that might perchance exist against Freeburns, the separate associates. They did not dispose of "part or the whole of the stock," because they had none with which to part. At most, they could assign an undetermined, indefinite, and contingent "community interest." *Virginia-Carolina Chem. Co. v.*

*Bouchelle*, 12 Ga. App. 661 (78 S. E. 51), cited by appellant, is not in point; for there, a man sold one-half interest in his business to another, and later disposed of the other half to the same person. Nor does its argument that the designing will take advantage of the situation, or that credit may be obtained on the strength of a person's having an interest in a business defeat the motion directed at its petition. Every creditor dealing on such an occasion knows the limitation of the chapter and paragraphs under discussion. And more than this, he has notice of the circumscribed equity, and knows, therefore, that credit given is subject to the laws of partnership. Anyway, permission to indulge in statutory construction does not enable us to expand said meaning beyond the legitimate scope of the terms utilized by the body whose right it was to exercise its prerogative to the extent, and to that only, as seemed wisest and best. Said branch of the government marked out our course. We have no other alternative, and consequently must and do hold that the "Bulk Sales Law" does not apply to the case at bar. The action of the district court was right, and its judgment is affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.