Ellis Jones Drug Co. *v.* Coker *et al.*[*]

(Division A.   June 11, 1928.)

[117 So. 545.   No. 26955.]

104

*Corpus Juris-Cyc. References: Chattel Mortgages, 11CJ, p. 429, n. 45; p. 581, n. 28; Evidence, 22CJ, p. 187, n. 10; Fraudulent Conveyances, 27CJ, p. 879, n. 88; Partnership, 30Cyc, p. 444, n. 20; p. 548, n. 22; On statutory requirements as to notice to creditors under Bulk Sales Law, see annotation in L. R. A. 1917F, 230; 12 R. C. L. 525. As to validity and effect of chattel mortgage on partner's interest in firm, see annotation in 54 A. L. R. 534; 20 R. C. L. 912; 5 R. C. L. Supp. 1131.

*Somerville & Somerville,* for appellant.

*Roberts & Hallam,* for appellees.

Argued orally by *A. D. Somerville,* for appellant.

McGOWEN, J.   The appellant, Ellis Jones Drug Company, filed its bill for injunction against R. L. Coker and N. L. Chapman, seeking to enjoin the foreclosure of a trust deed executed by N. L. Chapman in favor of R. L. Coker, on drug store fixtures. The facts essential to a decision of the case are as follows:

In January, 1920, N. L. Chapman desired to become a member of a partnership at Shaw, Miss., then operated by J. R. Germany and H. L. Jackson, and, for this purpose, Chapman borrowed three thousand dollars from the appellee Coker, which money was paid to H. L. Jackson, executing to secure same a deed of trust in the usual form on "my one-third interest in Jackson's Delta Drug

Store." It does not appear from the evidence that Jackson and Germany knew that Chapman had executed such trust deed.

In June, 1921, Jackson retired from the partnership and Chapman and Germany continued to operate the drug store under the name of "Delta Drug Store," and a year later, being indebted to Ellis Jones Drug Company; the partnership of Chapman & Germany executed a deed of trust in favor of Ellis Jones Drug Company on the fixtures in the drug store, describing each article.

The partnership continued to operate until the 11th day of December, 1924, when, after some negotiations, Mr. Ellis being in Shaw, and insisting upon payment of his account, or that the business be sold to him, there was a sale of the stock of goods and fixtures, bills receivable etc., to Ellis Jones Drug Company, such sale being in writing, and a list of debts being attached to the bill of sale which were assumed to be paid by Ellis Jones Drug Company. The amount, eight thousand six hundred thirteen dollars, as proven in this case, left an additional five hundred dollars of debts which were not taken into consideration. The consideration of the sale was ten thousand five hundred twenty-four dollars, and this amount exceeded the indebtedness assumed to be paid in the sum of one thousand nine hundred sixty-one dollars, so Ellis Jones Drug Company paid each of the partners, Germany and Chapman, nine hundred eighty dollars.

Mr. Ellis testified that Chapman mentioned the Coker trust deed, and Mr. Ellis understood that Chapman would pay the nine hundred eighty dollars over to Coker, which he did not do.

On the following day Ellis Jones Drug Company sold the business to Germany.

The court below held that the trust deed from Chapman to Coker was void as appears from the decree, and further held that, as shown by the decree, the Bulk Sales

Law was violated in the failure to give notice of the sale to creditors of individual members of the partnership, or, in other words, that no notice was given to Coker, who had an individual debt against Chapman, but no claim against the partnership, and that the sum of nine hundred eighty dollars paid by Ellis Jones Drug Company to Chapman was the amount of Coker's interest as mortgagee of Chapman in the partnership, and decreed the payment of the nine hundred eighty dollars by Ellis Jones Drug Company to Coker. Upon pleadings being properly made up, the court further decreed that, upon payment of said sum to Coker, Ellis Jones Drug Company should recover said amount so paid from Chapman.

Ellis Jones Drug Company prosecutes a direct appeal, and Chapman prosecutes a cross-appeal. It will not be necessary, in view of the conclusion we have reached, to consider the cross-appeal, as the case must be reversed upon the main decree, and that would leave the decree against Chapman without foundation.

■ Was the Bulk Sales Law violated in the failure to give notice to individual creditors of a member of the partnership who were not creditors of the partnership? Section 3335, Hemingway's 1927 Code (chapter 100, Laws of 1908), is as follows:

"A sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least, five days before the sale;

"(a) The seller shall have made a full and detailed inventory, showing the quantity, and, so far as can be done by the exercise of reasonable diligence, the cost price to him of each article sold; and

"(b) The purchaser shall have in good faith made full and explicit demand of the seller for the name, place

of residence and business and post office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and

"(c) The purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge, or with the exercise of reasonable diligence could have acquired knowledge, of the proposed sale and of the cost price of the merchandise proposed to be sold and of the price to be paid therefor by the proposed purchaser."

It will be observed that this statute provides that notice be given, and protects creditors of the seller.

The only question to be considered is whether Coker, a creditor of Chapman, was a creditor of the seller in the sale of this stock of goods in bulk. The seller in this case was the partnership, and not Chapman. We have no hesitancy in saying that Coker was not entitled to notice, laying down the rule that creditors of an individual member of a partnership are not entitled to the benefit of this statute, but that only creditors of the partnership are entitled to such notice where a sale of a stock of goods in bulk is made by a partnership. *Dakota Trust & Savings Bank* v. *Hanson* (C. C. A.), 5 F. (2d) 915; *Parker* v. *Tapscott,* 142 Miss. 768, 107 So. 561.

Counsel for appellee on the direct appeal insist that the rule is to the contrary because of the case of *Kline* v. *Sims* (Miss.), 114 So. 871. In that case, M. Kline, individually, was the seller of his stock of goods in bulk to M. Kline, Incorporated, and a creditor of M. Kline was not notified under the statute. M. Kline, individually, was the seller in that case, and the case was decided upon the facts, and nothing in the opinion is contrary to the view here announced, as there was no question but that M. Kline, individually, was the seller, and the creditors of the seller are entitled to notice. In the instant case, there is no question but that the seller was the partner-

ship, Chapman & Germany, and not Chapman, individually. It was not the intention of the law to prevent sales of stocks of goods in bulk. It was the intention of the statute that when such sales are made the creditors of the seller should be protected by the terms of the statute.

■ It was shown that the debts which Ellis Jones Drug Company had to pay for the firm amounted to five hundred five dollars and ninety-six cents more than was taken into consideration when they purchased from Chapman & Germany, and in ascertaining a partner's interest, it was necessary to take into consideration all the debts of the selling partner, and the court below erred in not considering this item and charging it against the partnership in ascertaining the interest of Chapman therein.

■ The bill of sale from Chapman & Germany of the drug store to Jones Ellis Drug Company showed that it was also for fixtures which had been in use in the store for years and which were valued at the invoice price of four thousand nine hundred dollars. Ellis Jones Drug Company offered to show what the fixtures were worth; that the fair market value was less than four thousand nine hundred dollars; and contended that Ellis Jones Drug Company should not be bound by price of fixtures as used in the sale from the partnership to them, which evidence was an effort on the part of the Ellis Jones Drug Company to collect its debt.

The Bulk Sales Law (Laws 1908, chapter 100) not having been applied in this case, so far as Coker was concerned, the fair way to prove the interest of the partnership in this business was to show the fair market value of the stock of goods at the time of the sale. Of course, the bill of sale was competent evidence as one way of proving the value of the stock of goods, but the evidence offered by plaintiff should have been admitted and should have received such consideration and weight as the court deemed it entitled to.

In view of this conclusion, it was reversible error for the court not to permit this proof to be made, and, as the court did not pass upon it, this will necessitate sending the case back for another trial.

■ We now come to the consideration whether or not the mortgage on the interest of a partner in a partnership business is good or valid. The description in the mortgage was: "My one-third interest in Jackson's Delta Drug Store situated in the town of Shaw, Bolivar county, Mississippi."

The name of the business was Jackson's Delta Drug Store, and a year later it was changed to Delta Drug Store.

Counsel for the appellant concede that the member of a partnership may execute a mortgage on his interest in the partnership, but contend that the partnership was terminated by the execution of the mortgage. That might be true if any one of the partners had discovered the execution and had demanded that it be terminated; but it continued until December 11, 1924, so that, whatever legal effect the mortgage of the partner's interest had, such interest continued in a pool as partners until the date of the sale.

We are of the opinion that a partner, where several individuals engage in a partnership enterprise, may execute a valid mortgage on his own private interest in the partnership property, and that the mortgagee is entitled to the interest of the mortgagor in the partnership after its debts are paid and the claims and liens as between the partners have been adjusted. *Tarbell* v. *West* (1881), 7 Abb. N. C. 279, affirming *Tarbell* v. *West*, 86 N. Y. 280; *Conant* v. *Frary*, 49 Ind. 530; *Kistner* v. *Sindlinger*, 33 Ind. 114; *Shaw* v. *McDonald*, 21 Ga. 395; *Hiscock* v. *Phelps*, 49 N. Y. 97; *Mechanics' Bank of Paterson* v. *Godwin*, 5 N. J. Eq. 334; *Churchill* v. *Proctor*, 31 Minn. 129, 16 N. W. 694; *Fisher* v. *Syfers*, 109 Ind. 514, 10 N. E. 306; *Cunningham* v. *Ward et al.*, 30 W. Va. 572, 5 S. E.

646; *Fort Worth Nat. Bank* v. *Daughterty*, 81 Tex. 301, 16 S. W. 1029; *Sloan* v. *Wilson*, 117 Ala. 583, 23 So. 145; *Patterson* v. *Atkinson*, 20 R. I. 102, 37 A. 532; *First Nat. Bank of Blakely* v. *Wade*, 25 Ga. App. 132, 102 S. E. 836; *Taylor* v. *McLaughlin*, 120 Ga. 703, 48 S. E. 203; *Schwanz* v. *Farmers' Co-op. Co.* (Iowa), 214 N. W. 491; *Fargo & Co.* v. *Ames*, 45 Iowa, 491; and *In re Cutler & Horgan* (Iowa), 212 N. W. 573.

Counsel contends that the mortgage is void because after its execution Chapman & Germany remained in possession, buying and selling and disposing of the stock of goods, citing *Britton* v. *Criswell*, 63 Miss. 394, *Johnston* v. *Tuttle*, 6 Miss. 492, 4 So. 553, and *Newton Oil & Mfg. Co.* v. *Carr*, 97 Miss. 234, 52 So. 353; and there is no question but the rule there announced is that, where a party remains in possession of the stock of goods, buying and selling, a mortgage on the stock of goods is void as to creditors; but this mortgage does not apply to any specific item of the stock of goods, but applies to the interest of the individual partner in the partnership property, which is clearly a different thing, and the cases cited have no application. We do not think there is any merit in the contention that, because the name of the drug store was changed afterwards, the interest of the partners, or the personnel of the partnership, was destroyed or the mortgage avoided. So long as Chapman remained a member of the partnership, Coker's trust deed was a good and binding instrument on Chapman's interest therein. The interest of Coker in the partnership is the due proportion of the balance of the business after all claims as between the partners had been adjusted. *Bowman* v. *O'Reilly*, 31 Miss. 262; *Atwood* v. *Meredith*, 37 Miss. 643; *Irby* v. *Graham*, 46 Miss. 430; *Williams* v. *Gage*, 49 Miss. 781, and *Gaines et al.* v. *Coney*, 51 Miss. 323.

We are, therefore, of the opinion that Coker had a right to have the chancery court ascertain the interest

of Chapman in this partnership on the date of sale, when the partnership terminated by the will and act of the partners; and, in order that the court below may ascertain what that interest was under the view hereinbefore announced in this case, we must send the case back for another trial, there to be proceeded with in accordance with this opinion.

Counsel for the appellant strongly urge upon us that we reconsider and overrule the case of *Walton* v. *Walter Fisher Co.*, 146 Miss. 291, 111 So. 364, wherein this court held that the Bulk Sales Law applies to fixtures and fixtures used in the store are within the purview of the act when used in connection with the articles kept for sale and sold. In view of the conclusion reached in this case, we do not now deem it necessary to consider this question, nor do we intimate any intention now to change the rule announced in that case.

There are other questions and issues argued by counsel which we do not deem necessary now to advert to.

*Reversed and remanded.*